GLOVER v. KANSAS CITY BOLT AND NUT COM-
PANY, Appellant.

153   327
96a  5183
96a  4367
98a  5369
100a 3560

Division One, January 9, 1900.

1. **Negligence:** NOTICE: CHARGEABLE WITH KNOWLEDGE. The plain-
tiff's fingers were cut off by a machine used in cutting scrap
iron. He was a boy employed to assist the operator of the machine,
by pulling pieces of iron out of a pile and placing them in position
for the operator to feed into the shears. His duty in no way requir-
ed him to touch the shears, and just two seconds before the accident
and while he was pulling at a piece of iron in the pile, the operator
passed between him and the machine, and then, with his back to
plaintiff, touched the lever which caused the blade of the machine to
descend and from some unexplained reason (unless the boy threw his
arm out to prevent a fall as the piece of iron he was pulling at gave
way), his hand was under the descending blade. *Held*, that, it was
error to submit to the jury the question of whether or not the
plaintiff's hand had been on the machine "a sufficient length of time
to have enabled defendant's servant to have seen the same by the
exercise of ordinary care before starting the shears."

2. ———: ACTUAL NOTICE. *Held*, also, that as no man, though
exercising the care of an ordinarily prudent person under the same
circumstances, would have anticipated that the boy would have put
his hand between the blades of the machine, and as the boy did not
intend to put his hand thereon and it was no part of his duty to do
so, it was not negligence for the operator to start the machine with-
out giving the boy notice of his intention to do so.

3. ———: INSURER. A manufacturing company is not an insurer
against accidents, nor is it chargeable or responsible for not pro-
viding against all possible and unanticipated happenings.

4. **Practice:** DEMURRER: WAIVER. A defendant does not waive his
right to insist on a demurrer to the evidence by asking other in-
structions.

5. **Negligence:** FELLOW SERVANT. The power to employ and dis-
charge is not always a conclusive test of the relation of master and
servant. Nor has any universally applicable test been established.
Fellow servant is a relative term, to be determined by the special
conditions of each case.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,*
*Judge.*

Reversed.

*Pratt, Dana & Black* for appellant.

(1) Defendant's demurrer to plaintiff's testimony should
have been sustained, or the court should have given the per-
emptory instruction in defendant's favor at the close of all the
testimony. Bailey on Masters' Liability, pp. 152-156; Nu-
gent v. Milling Co., 131 Mo. 256; Hickey v. Taaffe, 105
N. Y. 37; Malsky v. Schumacher, 27 N. Y. Sup. 332;
Schliermann v. Typewriter Co., 32 N. Y. Sup. 749; Buckley
v. Gutta Percha Co., 113 N. Y. 540; O'Keefe v. Thorn, 16
Atl. Rep. 737; Palmer v. Harrison, 57 Mich. 182; Higgins
Carpet Co. v. O'Keefe, 79 Fed. Rep. 900; Hettchen v. Chip-
man, 41 Atl. Rep. 65; Greef v. Brown, 7 Kan. App. 394;
Coullard v. Tecumseh Mills, 151 Mass. 85; Gardner v. Co-
hannet, 165 Mass. 507; Epperson v. Postal Tel. Co., (Mo.)
50 S. W. Rep. 795.    (2)    The fact that plaintiff was only
fourteen years old, does not preclude his being guilty of con-
tributory negligence or assuming the risk of his employment,
when it appears he was a boy of ordinary intelligence for one
of that age.    Bailey on Masters' Liability, p. 114; Payne v.
Railway, 136 Mo. 585; Spillane v. Railway, 135 Mo. 426;
Shearman & Redfield on Negligence, sec. 218; Buckley v.
Gutta Percha Co., 113 N. Y. 540; Harold v. Pfister, 92 Wis.
417; Gartland v. Railroad, 67 Ill. 498; Railroad v. Adams,
105 Ind. 151; Davis v. Augusta Factory, 92 Ga. 712; Nagle
v. Railroad, 88 Pa. St. 35; Railroad v. Miller, 51 Tex. 270;
Phillips v. Michael, 39 N. E. Rep. 669; Greef v. Brown, 7
Kan. App. 394.

*Lipscomb & Rust* for respondent.

When counsel for appellant asked instruction numbered
8, they in effect said to the court, "Our theory of this case is

that the plaintiff is entitled to recover if his hand was on the shears long enough for Davis to have seen it in time to have prevented the injury." By asking that instruction they admitted that there was evidence of that fact sufficient to go to the jury. If they thought there was no such evidence they should not have asked the instruction. Nor can appellant now claim that such instruction was erroneous because plaintiff and Davis were fellow servants, if it was erroneous they should not have asked it. Duffy v. Railroad, 19 Mo. App. 390; Noble v. Blount, 77 Mo. 241; Davis v. Brown, 67 Mo. 313; Smith v. Culligan, 74 Mo. 388; Hill v. Scott, 38 Mo. App. 370; Hartman v. Railroad, 48 Mo. App. 624; Hill v. Drug. Co., 140 Mo. 433.

MARSHALL, J.—The plaintiff, a minor, aged fourteen years, sues the defendant for personal injuries sustained by him on the 18th of September, 1895, while employed by it as helper to the operator of a machine called "shears," used for cutting scrap iron previous to its manufacture into nuts and bolts.

The petition specifies five grounds of negligence by defendant as follows:

1st. In employing a youth of plaintiff's age and inexperience to perform dangerous work.

2d. Failure to caution plaintiff as to the danger of the machinery and the work to be done by him.

3d. Allowing the scrap iron to be piled so near to the machine as to make it dangerous for the plaintiff to work in the space between the two.

4th. Employing and retaining in its employ a negligent, reckless and incompetent operator to run the machine.

5th. Negligence of the operator in starting the machine without notice to the plaintiff.

The record discloses that the machine is of very simple design and construction, being simply a pair of shears or

scissors used for cutting scrap iron; the lower blade is stationary, while the upper blade is raised about five or six inches, and then lowered by steam power applied by means of a belt, while a lever starts or stops the machine. The plaintiff, a bright and intelligent boy of fourteen years of age, who had previously worked in another department of the defendant's shop, was employed by the defendant's manager two or three days before the accident, and assigned to work with the operator of this machine, his duty being to take pieces of scrap iron from the pile near the machine and place them within reach of the operator of the machine, and to remove the pieces into which the iron had been cut by the machine. The machine, with its foundation, was about three or four feet in height, the pile of scrap iron around the machine was six or seven feet in height, and there was a space of two or three feet between the pile of scrap iron and the machine, and plaintiff and the operator stood in this space to work, the plaintiff usually on one side of the machine, and the operator on the other.

On the morning of the accident, the machine had not yet been put in motion, but by direction of the operator the plaintiff was engaged in taking pieces of scrap iron from the pile and placing them in a convenient place to be in easy reach of the operator, and the operator was engaged in oiling the machine. About two seconds before the accident the operator passed between the plaintiff and the machine, in the space so left between the pile of iron and the machine, and with his back to the plaintiff, immediately took hold of the lever, started the machine and with the first descent of the upper blade of the shears, the plaintiff's thumb and three fingers of his left hand were cut off. We will let the plaintiff and the operator tell how the accident occurred. Plaintiff's version is as follows:

"Q. You knew he was going to start up as soon as he got through? A. He didn't have any certain time to be through.

"Q.  He didn't have any certain time, but after he got through he would start it up?  A.  Yes, sir, and then I would go around on the other side.  This place where the scissors came was four feet above the floor where I laid this iron.  There was a space as large as two feet between the frame work that it stood on and the pile that I got iron off of; the pile was east of the machinery.  When I was getting the iron down I had my back to the machine.  I don't really know how I did get my hand on there; if I had known I would not have put it under.

"Q.  You had your deposition taken did you not?  A. Yes, sir.

"Q.  When your deposition was taken you told about it before a notary public?  A. Yes, sir.

"Q.  Were you asked these questions and did you make these answers:  'Q.  Now, what was the position you were standing in at the time you got your fingers cut off?  A.  Why, I was standing with my face towards the east and pulling iron for him to cut, and I think as I pulled on the iron that the piece I was trying to get out was tight, and I think I pulled it and went to fall and caught my hand on the shear blade.'  Did you say that?  A.  Yes, sir, I said that.

"Q.  Is that right?  A.  It might have been that way. I don't know exactly how I did get it there.

"Q.  Is that the way it occurred?  A.  I don't know whether it was that way or not.

"Q.  You say you said this?  A.  I said it.

"Q.  Is that right?  A.  It might have been that way; I don't know exactly how I did get it there.

"Q.  Is that the way it occurred?  A.  I say I don't know whether it was that way or not.

"Q.  You said this?  A.  I said it, you see it there.

"Q.  Didn't you say that; if you don't understand it let me read it.  Do you understand it?  A.  Yes, sir, I understand it.

"Q.· You said that when you testified before? A. Yes, sir.

"Q. Is that the way it occurred? A. I didn't know exactly how it occurred at the time; that is the way I stated it.

"Q. Can you tell the jury how you got your hands on the shears? A. I got my hands there pulling iron some way.

"Q. You told me you didn't have anything to do with the shears? A. No, sir.

"Q. You had no business to have your hands up there? A. No, sir.

"Q. How did you get your hands on the place where the shears was; didn't you slip and fall over, catch your hand there, just as the shears came down? A. It was that way some way.

"Q. Was that the way it occurred? A. That is the way it must have been.

"Q. How did you come to stumble? A. I never stumbled; I was pulling iron out of the pile. I will suppose this table is the place where the shears came down. I had my back to it looking out towards the iron pile; that is the way I was standing reaching right straight out to pull a piece of iron out of the side. I was facing the slope of the pile, that was east, my side was right to this frame work that this cutter was on. I was on the south side of it; my side would be to the shears if it faced east.

"I was pulling out a piece of iron right out of the side of the pile for the purpose of laying it down on the floor. The piece was tight, and I was pulling on it and in some way or another my hand lighted on the shears, and just as it lighted why, that thing came down. I had not had it there very long; just as I got it there the thing happened.

"Q. You can not explain how you got it there unless you stumbled and fell over? A. No, sir.

"Q. You didn't have anything to do with the running of the shears? A.. No, sir.

"Objected to.

"The Court: Whatever explanation he wants to make he can do so.

"I don't know exactly how I happened to put my hand there. I didn't have anything to do with the shears and had no business to have my hand up there. I would not have had it there if I had known I was going to put it there. I can not explain how it happened to get there unless it was I stumbled when I was pulling out that tight piece of iron, and just the instant my hand struck that place the shears came down. . It had not been staying there before; it happened just instantly—just as my hand struck that place the shears came down and it cut off my fingers. That was the first stroke of the shears. They had not been there any length of time at all.

"Q. Not a second? A. O, it might have been a second.

"Objected to.

"Q. It had not been there a second? A. I don't know whether it had been there a second or not.

"Q. The instant it got there the shears hit it? A. If it was a second it would have been there an instant.

"Q. You didn't have time to jerk your hand away before it came down on your fingers? A. I don't know how it happened, may be the turning on of the lever. I didn't have time to jerk my hand away from the frame work before my fingers were cut. I would not have put my hand on that place if I had known I was going to get it hurt. I stood pulling out iron, facing east. Davis was south of me; he was right back of me. His face was towards the shears. He started the thing up by pulling a lever; there is a belt; it has a lever with pulleys."

The operator's version is as follows:

"I was there running the shearing machine when this boy was hurt, that morning when he was pulling out the iron; just before starting the machinery I was oiling up the shafting; I was getting ready to start the machine; when I got through oiling I came back and told the boy to fill up the barrow with scraps—the wheelbarrow. He put them in the barrow, like it is in that picture; there was a wheelbarrow there at that time; I had the wheelbarrow there and the stuff I had cut he had to put in the wheelbarrow. After I got through oiling I was going to start to work—to start the machine; I had to go right there, not two feet, right between him and the shears, when I started the shears up he was in no danger at all; I don't know how he got his finger there; I turned my back right to him to start up the shears this way; I had my hand on the pulley—on the lever watching the belt; I passed by him as I walked up to the place I was going to start it; he was done then pulling iron, he was on no part of the shears; he would not be because I passed between him and the shears."

## Cross-examination.

"I was between him and the shears when I passed him; that was not two seconds before the accident occurred; if the boy says I came up from behind—came up behind him and started the machine, he is mistaken about that; it could not be done. The boy, at the time he got hurt, was picking up the iron; I told him to do it; it was his duty to do what I told him; he was working under me. I guess I was about a foot from the shears when I started them; the boy then was right in front of the shears, right behind me, I was on the side of the shears and the boy right in front, behind me; I was facing towards the tail of the shears, and the boy was behind me, up here, right behind me. As to which way he was facing, I could not tell you, I could not see him; two seconds before,

when I went by there, he was facing towards the iron; his face was then from the shears.

"Q. Was there anything between you and the shears to prevent you seeing his hand if it had been on the shears? A. Well, I was looking at the belt; I could not see the shears or the boy or anything else then; the ends of the shears were fronting east, and I was standing with my face west when the shears started. The boy and I were about a foot from the shears—a foot from the side of the shears; the boy was behind me, right near the point of the shears. Two seconds before when I passed by there he was just about the distance from the shears as the distance between him and me passing; about a foot probably; I had about three feet in there to work in; he was not at the place he usually stood when the shears were in motion; he was out of his place; when the shears were in motion he was on the north side. I walked right straight by him toward the shears; I didn't look at him; he was picking up iron when I passed by him; I knew he was there, of course. At the time I set the shears in motion I could not see behind me; I could not see the shears nor the boy; I could not start the shears up and look around; I could not watch the belt; I could have looked around, just to glance around to see whether there was anybody there before I started, of course; I could not start the machine while I was looking at the shears, when my hand was on the pulley I could not. When I was working at the shears I was facing north, right towards the shears; when I was working the shears, standing facing north, and wanted to stop the shears I would pull the lever back; the lever was right opposite me, right by the side of me; when I am facing right towards the shears, the lever is on my left hand, but I always pull it with my right hand. I could pull it with my left hand, stopping it, but I could not start it, because I could not put the pulley on. I started those shears by the lever this thing shown here in the photograph; that upper one, that rope or string to pull down upon it over about the center of the machine. Suppose I was standing up now, and wanted

to start the shears, I would throw the belt over on the tight pulley by my hand on the other pulley to shove it straight on. The belt is apt to fly off at the top, there is too much strain on it."

### Re-direct Examination.

"After I left the machinery I came around in front of the shears and the boy·was pulling iron out of an iron pile, and I stepped right to the side of him, and as I got back of him I reached up and started the machine in motion. He was down below pulling out iron in no place of danger, so far as I could see."

### ·Re-cross Examination.

"He was right by the side of the pile of iron. He was picking up the iron and I passed between him and the shears. There was just about room enough for me to pass."

. The instructions given for the plaintiff put the case to the jury upon the fifth charge of negligence, to wit, negligence of the operator in starting the machine without notice to plaintiff. The court refused the instructions asked by the plaintiff which predicated a right to recover upon the other grounds of negligence, but as the plaintiff submitted to that ruling of the court, the case is here only as to the fifth ground of negligence. The defendant duly excepted to the instructions given for the plaintiff, and now complains, particularly of the fourth, which is as follows:

"The court instructs the jury that if they believe from the evidence the defendant had authorized, or instructed plaintiff to act as helper to, or to assist or to wait on the servant of defendant who was at the time of plaintiff's injury managing or running the shears referred to in the evidence, in connection with the business of running and managing said shears, and if they further believe from the evidence that said servant who was running the said shears; had by nature of his employment and position immediate control and direction of plaintiff,

with reference to the services which plaintiff was performing when injured, and had power and authority to control plaintiff in his work, and if the jury believe from the evidence plaintiff was injured while performing services so required of him and that he was instructed to perform the said services by said servant who was running or managing said shears, and if the jury further believe from the evidence that while plaintiff was so employed in performing work under the direction of defendant's said servant, and at the time was in a position that would be dangerous to plaintiff if the shears were in motion, and defendant's said servant knew thereof, and was at such time in a position where he was not allowed or permitted to be when said shears were in motion, and said servant knew thereof, and such position was dangerous if said shears were in motion, and you further find that plaintiff's hand was in the way of said shears a sufficient time to have enabled defendant's said servant to have seen the same by the exercise of ordinary care before starting said shears, but that he negligently failed to exercise such care, and that by reason of such negligence plaintiff was injured without any fault on his part contributing thereto, then they should find for the plaintiff, and in determining whether plaintiff was guilty of negligence on his own part the jury should take into consideration his age and experience as shown by the evidence."

The defendant demurred to the plaintiff's case and also to the plaintiff's right to recover upon the whole case, and now assigns as error the refusal of the court to so direct the jury.

There was a verdict for the plaintiff for three thousand dollars, and after proper steps, defendant appealed to this court.

I.

There is no material legal difference between the case as made by the plaintiff and the whole case as presented by both

parties, as to the issue to which the case was limited by the trial court. The facts being conceded, the whole case resolves itself into a question of law as to whether the operator was guilty of negligence in starting the machine without giving plaintiff notice of intention to do so, while he knew, or by the exercise of ordinary care might have known, that plaintiff's hand was between the blades of the shears.

There is no controversy that plaintiff's duty in no way required him to touch the shears. There is no room, therefore, for a contention that he did place his hand on the machine or between the shears in the performance of his duty, nor is any such claim made for him in this case. When he was injured he was on the side of the machine where his work required him to be. The operator usually stood on the opposite side of the machine, but when the accident occurred he was on the same side of it with the plaintiff, and had just finished oiling it, had within two seconds before the accident occurred passed between plaintiff and the machine, and hence knew that the plaintiff was not then touching the machine, and was therefore in no danger from the starting of the machine. Within two seconds after so passing between plaintiff and the machine, and while his back was turned to the plaintiff, the operator started the machine, and upon the first descent of the upper blade of the shears the plaintiff was injured. There is absolutely no evidence as to how the plaintiff's hand got between the blades of the shears. The plaintiff gives no positive testimony on this subject. The utmost he would say was that just before the machine started he was standing with his back to the machine and was trying to take a piece of iron from the pile; "the piece was tight, and I was pulling on it and in some way or other my hand lighted on the shears, and just as it lighted, why, that thing came down;" and again: "The piece I was trying to get out was tight, and I think I pulled it and went to fall and caught my hand on the shear blade;" and again: "Ques. How did you get your hands on the place

where the shears was; didn't you slip and fall over, catch your hand there, just as the shears came down? Ans. It was that way some way. Ques. Was that the way it occurred? Ans. That is the way it must have been. Ques. How did you come to stumble? Ans. I never stumbled," etc.; and again: "Ques. You can not explain how you got it there unless you stumbled and fell over? Ans. No, sir;" and again, when permitted by the court to make any explanation he wanted to, he said: "I don't know exactly how I happened to put my hand there. I didn't have anything to do with the shears, and had no business to have my hand up there. I would not have had it there, if I had known I was going to put it there. *I can not explain how it happened to get there unless it was I stumbled when I was pulling out that tight piece of iron, and just the instant my hand struck that place the shears came down.* It had not been staying there before; *it happened just instantly*—just as my hand struck that place the shears came down and it cut off my fingers. That was the first stroke of the shears. They had not been there any length of time. Ques. Not a second? Ans. O, it might have been a second. Ques. It had not been there a second? Ans. I don't know whether it had been there a second or not."

It stands uncontradicted that his hand had not been on the machine two seconds, because at that interval of time before the machine was started the operator had passed between him and the machine. Making all proper allowances for inaccuracy of the witnesses in estimating time as to the length of time the plaintiff's hand was placed on the machine before his injury was received, it is very plain that it was but a very insignificant space of time, that the operator did not know that his fingers were on the machine, and that the time was not long enough to impute knowledge to the operator, and hence instruction number four given for the plaintiff was erroneous in submitting to the jury the question as to whether the plaintiff's hand had been on the machine "a sufficient

length of time to have enabled defendant's servant to have seen the same by the exercise of ordinary care before starting said shears." This narrows the case down to whether it was negligence for the operator to start the machine without giving plaintiff notice of intention to do so.

The court properly told the jury that by negligence "is meant the want of that degree of care that an ordinarily prudent person would have exercised under the circumstances."

An extended discussion would not make this case any plainer than the statement of the facts does. No man would have anticipated that the plaintiff would put his hand between the blades of the machine. The plaintiff himself did not intend to do so, for he knew the danger of doing so. He can only account for his hand being there on the theory that he must have stumbled, and in trying to prevent his falling he inadvertently put his hand on the machine, but even this he does not say was the cause of it—he only says he can not explain the fact of his hand being there unless it happened that way. His explanation is reasonable, but it is equally reasonable to believe that when he pulled the piece of iron which was stuck tight in the pile, it suddenly became loosened and he, not having braced himself properly, was thrown down backwards towards the machine, and thus threw his hand out to prevent a fall. In any event he did not know that he would so pull on the iron as to lose his balance, or stumble and to prevent a fall would put his hand on the machine. The plaintiff, very reasonably, says that it was all done in an instant, and it must have been so for it was scarcely more than an instant previously that the operator had passed between him and the machine and saw that he was safe, and he had no intimation or right to assume that plaintiff would so soon thereafter be placed in a position of danger, or to anticipate any danger to any one from starting the machine. It is true the plaintiff did not know the machine had been or was about to be started, but the accident might have occurred and would have occurred at

any time when the machine was in motion, for it was the pulling of the iron from the pile and the losing his balance and the putting out of his hand to prevent his falling, which brought the plaintiff's hand in contact with the machine, and it was therefore a risk incident to the employment which the plaintiff assumed when he accepted the employment. The fact that the plaintiff did not expect or intend to put his hand on the machine, and that it was no part of his duty to do so, is, of itself, a sufficient answer to the contention that any ordinarily prudent man would have been charged with notice that he intended to do so, and no man is chargeable or responsible for not providing against all possible and unanticipated accidents and happenings. Insurance policies alone are to be relied on for compensation for injuries arising from accidents, and the defendant is not an insurer.

Neither plaintiff's age nor want of experience makes the defendant liable in this case for it is clear that it was guilty of no negligence whatever, neither was the operator, for the injuries received by the plaintiff were caused by an accident which was not and could not have been foreseen or anticipated by the defendant or the operator or any other man even exercising the highest degree of care or prudence. There was no notice to plaintiff necessary in the starting of the machine under ordinary circumstances, for it was no part of plaintiff's duty to do anything that would put him in a dangerous place if the machinery was started without notice, and the operator in this case was not obliged to give the plaintiff any notice, in this instance, before starting the machine, because but an instant before he had seen that plaintiff was in a safe place and could not be hurt while in that place, and because he knew the plaintiff had no occasion to touch the machine in order to fully perform his duties, and because he could not be expected to anticipate that plaintiff would pull on the iron so hard as to lose his balance and put out his hand to prevent falling, nor is it even shown that he knew the iron was stuck so tight in the

pile as to require any such exertion on the part of the plaintiff to extricate it.

The demurrer to the evidence should have been sustained, and the defendant did not waive the right to insist upon this proposition, by asking other instructions.   [Cochran v. Street R'y, 113 Mo. 359.]

## II.

It is not necessary to discuss or decide whether the operator and the plaintiff were fellow servants.   The result in this case would be the same if the master himself had been present and acting instead of having an operator to do so for him.   All the decisions that have been rendered and all the text-books that have been written have not succeeded in giving a definition of who are fellow servants which is plain and broad and comprehensive enough to be universally applicable or to be universally accepted.   The power to employ and discharge is not always a conclusive test.   The opportunity to observe and influence and report delinquencies to a common correcting power is one of the tests employed, as is a consideration of the act to be done by the two persons, but no absolute, unfailing rule has ever yet been announced which has been accepted as the Alpha and Omega of the law on this subject and perhaps none such will ever be promulgated. . The reason for all which arises from the fact that the relations between the two persons employed by the same master vary in almost every case.   Fellow servant is therefore a relative term, which must be applied to the special conditions presented in each case, and a result worked out from precedents applicable to exactly similar conditions or from the power of discrimination of the writer of each opinion, and hence it is unnatural and unreasonable to expect the same results in all cases.

The defendant not having been shown to have been guilty of any negligence in this case, the judgment of the circuit court must be reversed.   It is so ordered.   All concur.