PATRICK E. BARRY *vs.* NEW YORK BISCUIT COMPANY.

Middlesex.    November 15, 16, 1900. — January 4, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

In an action by an employee to recover for injuries received while operating a
freight elevator of the defendant, it appeared, that the elevator was an open
platform, that the plaintiff had operated the elevator for more than two months,
and knew that it would shift and jolt when it was started, and also knew that
there was a beam running across the wall on one side of the elevator shaft
projecting about three inches, that the plaintiff in the course of his employment
placed on the elevator eight large empty boxes, making a pile six feet high, that
he then started the elevator, standing on the opposite side of the elevator from
the wall on which the beam projected, with his back to the boxes, that the boxes
caught on the beam and were pressed upon the plaintiff and struck him in
the back so that he was pushed against the next floor and was injured. *Held*,
that the plaintiff was either negligent in failing to appreciate the risk, or know-
ing the risk assumed it, and that a verdict should have been ordered for the
defendant.

TORT brought by an employee of the defendant to recover
for injuries received by him while operating a freight elevator
in the defendant's biscuit factory at Cambridge. Writ dated
January 12, 1898.

At the trial in the Superior Court, before *Sherman*, J., it
appeared that the defendant's factory consisted of a basement
and four floors above the ground. The freight elevator in
question ran up and down an elevator well or shaft, one side of
which was formed by a wall of the building on Franklin Street
in Cambridge. The shaft extended down to the floor of the
basement or cellar, and, excepting the Franklin Street wall, was
nothing but a series of square holes cut in the several floors. It
was not boxed in above the first floor; but from the first, or ship-
ping-room floor down to the floor of the basement the well was
boxed in, with an opening into the basement on the side farthest
away from the Franklin Street wall. The elevator itself con-
sisted of a platform with an upright post at each corner about
six feet high, and a beam across the top of the posts into which
the cable supporting the elevator was fastened. There were no
sides to the elevator.

The plaintiff testified that he went to work for the defendant

about a week before Labor Day in 1897. His duties were to run the elevator when it was to be run, and to do anything he was asked to do around the shipping-room floor, which was the first floor. He worked there until November 11th of that year, the day of the accident, and had operated the elevator a good many times each day. He knew nothing about the hoisting machine. He testified that "when you start the elevator it would kind of shift this way when it would start — kind of jolt — when you started it from any of the floors;" that "it would give a kind of a quick jounce and it would kind of wobble;" that "just as you start it may give three or four jounces before it would stop and get to running smoothly;" that he first noticed the jolting about two or three weeks after he went there, and that he spoke to the engineer of the building about it; that he told him that the elevator kind of shifted, and he thought he would have him fix it; and that the engineer said that he would.

On the day of the accident the plaintiff got orders to bring up from the basement some empty cases to be repaired. They were wooden cases about three feet long and two feet high; good strong cases and empty, but were old ones that were not being used. He went down to the basement on the elevator in company with one MacDonald and found the cases in the basement, and the plaintiff himself put them, eight in number, on the elevator.

When on the elevator the eight cases made a pile about six feet high or a little over. The plaintiff testified, that when he piled them he thought they were about four or five inches from the Franklin Street edge of the elevator.

On the Franklin Street side of the elevator there was a beam running across the wall, which projected out from the Franklin Street side about three inches. It was part of the elevator opening at the shipping-room floor. As the elevator went up and down ordinarily it cleared this beam. After the plaintiff had the cases on, he pulled his rope and started to ascend. He was then standing at the side of the elevator platform next to the shipping-room floor and facing the shipping-room, with his back towards Franklin Street. MacDonald was also on the elevator, standing towards the plaintiff's right. The

cases were behind the plaintiff. The accident and injury then occurred. The plaintiff was twenty-three years old at the time of the accident.

On cross-examination he testified: "I packed them [the eight cases] on the elevator myself; no one had anything to do with putting them on but myself, and I piled them on just to suit me. The beam was just outside the elevator on the wall, and the elevator would run up and down without hitting anything. If any one had gone in there and piled the boxes on the elevator and kept them six inches inside the elevator, there is no doubt but what they would have gone right straight up; and if they had been piled out so that they came over the edge of the elevator platform a little, if they reached up a little and struck this beam, there would be trouble and they would catch. The boxes were piled up higher than my head behind me, and before I got up to the second story the boxes were pressed forward and came against me. I suppose it was because they were caught there. I don't know where they caught. If it had not been for the pressure of those boxes nothing would have happened.

" When I started the elevator at the time of the accident there was nothing, as I know of, about the working of it any different from what I have described as having taken place many times before. I had taken them up before in the same way many times."

At the close of the evidence the defendant's counsel asked the court to rule that the plaintiff was not entitled to a verdict upon all the evidence, which ruling the court declined to give, and the defendant excepted.

The jury found for the plaintiff, and it was agreed that if the defendant's exceptions should be sustained, judgment might be entered for the defendant.

The presiding judge submitted to the jury the following questions:

1. " Did the elevator at the time of the accident, start with a jerk and shift back and forward? If so, did that render the elevator defective and dangerous?"

2. " Did the plaintiff know that the elevator started with a jerk and shifted back and forward? If so, did he appreciate

the danger of using such elevator, loaded as it was at the time of the accident?"

To the first question the jury answered " Yes," and to the second they returned a general answer in the negative.

*C. S. Knowles*, for the defendant.

*E. R. Champlin & G. L. Wilson*, for the plaintiff.

BARKER, J. In our opinion a verdict should have been ordered for the defendant upon the ground that, even if the plaintiff did not in fact appreciate the danger of using the elevator in the condition in which it was and located and loaded as it was at the time of the accident, the danger was so obvious that he must be held to have been negligent in incurring the risk or to have known and assumed it.

The danger was that the jerking of the elevator, which he knew, would cause loose boxes placed by himself upon the elevator floor in piles six feet or more high, to be so moved and shaken in the ascent of the elevator as to be caught under the projecting beam the place of which he also knew.

The plaintiff was twenty-three years of age. He had run the elevator many times a day for some sixty working days before the time of the accident. The jerking and shifting of the elevator was not new to him or unexpected, and its tendency to shift the position of the boxes so as to place them where they would be caught by the beam was so obvious that he should have appreciated it, and if he did not in fact both appreciate it and use means to prevent such an occurrence he was not in the exercise of ordinary care. If his own testimony was true he carelessly failed to appreciate the risk, and this carelessness caused him to so place the boxes that it was obvious that they were in danger of being so moved by the jerking of the elevator as to be caught under the beam, and to take no other means to keep them in a safe position was negligence on his part. If he did appreciate the risk there is no question but that he assumed it.

In the opinion of a majority of the court there should be judgment for the defendant in accordance with the agreement made at the trial in the Superior Court.

> *Exceptions sustained ; judgment for the defendant in accordance with the agreement.*