## ST. LOUIS CORDAGE CO. v. MILLER.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1903.)

### No. 1,856.

1. INJURY TO SERVANT—NEGLIGENCE—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE—DISTINCT DEFENSES.
   Assumption of risk and contributory negligence are distinct and separate defenses. The former rests in contract, the latter in tort.

2. SAME—ASSUMPTION OF RISK NOT BASED ON CONTRIBUTORY NEGLIGENCE.
   The defense of assumption of risk is not conditioned or limited by the existence of contributory negligence, and the latter is not an element or attribute of it.
   Assumption of risk is alike available whether the risk assumed is great or small, whether the danger from it was imminent and certain or remote and improbable, and whether or not the servant was guilty of contributory negligence in assuming the risk or in exposing himself to the danger.

3. SAME—GENERAL DOCTRINE.
   A servant, by entering or continuing in the employment of a master, without complaint, assumes the risks and dangers of the employment which he knows and appreciates and those which an ordinarily prudent and careful person of his capacity and intelligence would have known and appreciated in his situation.

4. SAME—ESTOPPEL.
   An employé cannot be heard to say that he did not appreciate or realize the danger where the defects were obvious and the dangers would have been apparent to an ordinarily prudent person of his intelligence and experience in his situation.

5. SAME—DEFECTS AND DANGERS.
   A servant, by continuing in the employment without complaint, assumes the risks of the defects and dangers which arise during the service, to the same extent that he assumes those which existed when he entered the employment.

6. SAME—DEFECTS ARISING FROM NEGLIGENCE OF MASTER.
   Among the risks and dangers which the servant assumes by entering or continuing in the employment without notifying his master of them, are those which arise from the failure of the master to completely discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances to use.

¶ 1. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

**7. SAME—FACTORY ACT OF MISSOURI—EFFECT.**

The factory act of Missouri (2 Rev. St. 1899, § 6433), which requires gearing and belting to be guarded, does not abolish the defense of assumption of risk. It does not deprive parties of their right to contract concerning the risks of their avocations.

**8. SAME—PEREMPTORY INSTRUCTION.**

Where the uncontradicted evidence discloses the fact that the defect in the place or machinery was obvious, and the danger from it apparent to an ordinarily prudent person of the intelligence and capacity of the servant, and that the servant entered upon or continued in the service without complaint of it, the defense of assumption of risk is conclusively established, there is no question for a jury, and the court should instruct them to return a verdict for the master.

**9. FACTS—ERRORS.**

A young woman 20 years of age was injured by slipping her fingers into the mashing cogs of gearing in a factory where she had worked more than six months, and where she had been frequently called upon to operate, for 10 or 15 minutes at a time, the forming machine which she was tending when she was injured. In stopping and starting the machine she moved the greasy handle of a lever from a point eight inches from the exposed cogs to a point five or six inches from them, and then back again. When she commenced to work at this machine the cogs were covered, but they had been uncovered for six weeks before her injury, she had been aware of this fact, and she had continued to operate the lever for 10 or 15 minutes each day during the six weeks after the cogs were exposed, when her hand slipped from the lever between the cogs, and her fingers were injured. The court refused to instruct the jury to return a verdict for the defendant, and charged them that the servant did not assume the risk of the exposed machinery unless the danger from it was so imminent that no ordinarily prudent person would have incurred it.

*Held:* (1) The defense of assumption of risk was not conditioned by the imminence of the danger; and (2) the defect of the exposed gearing was obvious and the danger apparent, and the court should have instructed the jury that the servant could not recover.

Thayer, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

On February 13, 1902, Miss Mary Miller, an employé of the St. Louis Cordage Company, while operating the lever of a forming machine in its factory, permitted her hand to slip from the handle of the lever in the revolving and engaging cogs of the gearing which propelled the machine, and lost one finger and a portion of another. She sued the defendant below, the Cordage Company, for negligence in that it had not covered its gearing as required by 2 Rev. St. Mo. 1899, § 6433, and the company answered that the condition of the gearing was obvious and well known to the plaintiff, that the danger from it was apparent, and that she had assumed the risk of working near it in its exposed condition. The work of the forming machine was to make into rope the twine sisal and hemp from which that article is manufactured. These articles were fed into the machine by the operator. It was started and stopped by means of a lever within her reach. When this lever was pulled forward to start the machine its handle was about 8 inches from the engaging cogs which injured the plaintiff, and when it was pushed back to stop it the handle was about 5 or 6 inches from them. The hemp and sisal were necessarily oily, and the handle of the lever was always greasy. Prior to December, 1901, the mashing cogs which injured the plaintiff had been covered, but there had been no covering upon them subsequent to that date. The plaintiff testified that she did not know that it was dangerous to

---

¶ 7. See Master and Servant, vol. 34, Cent. Dig. § 545.

run the gearing without covering. She was 20 years of age, had worked in factories for many months, and had been constantly employed in the factory of the defendant from July, 1901, until she was injured on February 13, 1902. She ordinarily tended a feeding machine, but by direction of the foreman frequently operated this forming machine 10 or 15 minutes at a time. She operated it in this way before the covering was removed from the cogs at Christmas, 1901, and every working day after that time until she was injured. She knew that the cogs had been covered, that they were uncovered at all times after December 25, 1901, and all the facts which have been recited. But she gave no notice to her employer that the gearing was exposed, and made no protest against its condition. Another young woman worked on another forming machine in the same room whose gearing was exposed in the same way during this time. On February 13, 1902, as the plaintiff was pushing the lever back to stop the machine, her hand slipped from its handle into the engaging cogs, which were in rapid motion, and was injured. The facts which have been stated were undisputed at the close of the trial, and they constitute all the material facts in this case. The court declined to instruct the jury to return a verdict for the defendant, and submitted the case to their consideration under a charge that "the law on this subject is as follows: Even if you find that the plaintiff remained in the employ of the defendant with full knowledge of the fact that the gearing of the machine by which she was injured was not covered or guarded as required by the statute of Missouri which I have just read to you, yet if the risk incurred by her remaining there and performing the duties assigned to her with the unguarded gearing was not so imminent that persons of ordinary prudence under similar circumstances would have declined to incur it and would have refused to perform the work so assigned to them to do, then the plaintiff, remaining there at work, even with full knowledge of the situation, cannot be held to have so assumed the risk of the employment, or to have so contributed to her own injury as to preclude a recovery in this case. If, on the other hand, you find that the risk or danger attending the performing of the work assigned to the plaintiff by reason of the exposed gearing in question was so grave and imminent that persons of ordinary prudence under similar circumstances would have declined to go on with the work with the exposed gearing, then plaintiff, by so continuing to perform the work, must be held to have assumed all the risk attending it, and cannot recover in this case."

The refusal of the court to peremptorily instruct the jury to return a verdict for the defendant, and the portion of the charge which has been quoted, are assigned as errors.

William H. Biggs and Davis Biggs, for plaintiff in error.
M. Kinealy and W. B. Kinealy, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant did not plead in this case that the plaintiff was guilty of contributory negligence. Its only defense was that the rapidly revolving cogs were seen and known by the plaintiff, that the danger from them was apparent, and that she assumed the risk of it. These are the questions, therefore, which the instruction to the jury presents: Are the risks from defective place of employment, appliances, and fellow servants which employés assume by entering and continuing in the service of a master with knowledge of the situation and its dangers and without complaint, limited to those risks the danger from which is so imminent that persons of ordinary prudence would not incur them? Or do the risks capable of assumption in

this way include those less serious chances which servants of ordinary prudence would and do incur?

The charge of the court answered the first of these questions in the affirmative, and the second in the negative. It was, in effect, that the defense of assumption of risk and the defense of contributory negligence were identical in effect and coterminous in extent, that no servant in the exercise of due care can lawfully assume the risk of a defective place, defective machinery, or defective appliances, and that it is only where the danger from them is so grave that no prudent person would chance it that a servant can lawfully contract to take the chance of the injury which they may inflict upon him. This instruction was undoubtedly inspired by the opinion of the majority of this court in Southern Pac. Co. v. Yeargin, 109 Fed. 436, 442, 48 C. C. A. 497, 503, to which the writer never assented, and the following authorities are now cited in support of it: Hough v. Railway Co., 100 U. S. 224, 225, 25 L. Ed. 612; District of Columbia v. Mc-Elligott, 117 U. S. 621, 631, 6 Sup. Ct. 884, 29 L. Ed. 946; Northern Pac. R. Co. v. Herbert, 116 U. S. 642, 655, 6 Sup. Ct. 590, 29 L. Ed. 755; Goodlett v. Louisville & Nashville R. Co., 122 U. S. 391, 411, 7 Sup. Ct. 1254, 30 L. Ed. 1230; Northern Pac. R. Co. v. Mares, 123 U. S. 710, 712, 714, 715, 720, 8 Sup. Ct. 321, 31 L. Ed. 296; Kane v. Northern Central R. Co., 128 U. S. 91, 94, 9 Sup. Ct. 16, 32 L. Ed. 339; Snow v. Housatonic R. Co., 90 Mass. 441, 450, 85 Am. Dec. 720; Ford v. Fitchburg R. Co., 110 Mass. 240, 241, 242, 243, 261, 14 Am. Rep. 598; Patterson v. Pittsburg, etc., R. Co., 76 Pa. 389, 394, 18 Am. Rep. 412; Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 155, 33 N. W. 551; Francis v. Railroad Co., 127 Mo. 658, 666, 672, 28 S. W. 842, 30 S. W. 129; O'Mellia v. Kansas City, etc., R. Co., 115 Mo. 205, 212, 218, 21 S. W. 503; Thorpe v. Missouri Pac. R. Co., 89 Mo. 650, 653, 2 S. W. 3, 58 Am. Rep. 120; Wood's Law of Master and Servant, § 385; Buswell on Law of Personal Injuries, § 207; Shearman & Redfield on Law of Negligence, § 211.

There is an exception to the law of assumption of risk as well established as the rule itself. It is that, where a servant makes complaint to his master of a dangerous defect in his place of work or in the appliances furnished him, the risk of that defect is cast upon the master, and the servant is relieved from it for a reasonable time to enable the employer to remove it, unless the danger from the defect is so imminent that a person of ordinary prudence would not continue in the employment after the defect is discovered. Hough v. Railway Co., 100 U. S. 225, 25 L. Ed. 612. Of course, cases which fall under the exception are not governed by the rule, and the only defense remaining in such cases is that of contributory negligence. Laying aside the case of Southern Pac. Co. v. Yeargin, all the cases above cited fall within the exception, so that the doctrine of assumption of risk was not applicable to them, and the only question remaining in them was one of contributory negligence, excepting the cases of Northern Pac. R. Co. v. Herbert, 116 U. S. 642, 653, 6 Sup. Ct. 590, 29 L. Ed. 755; Goodlett v. Louisville & Nashville R. Co., 122 U. S. 391, 411, 7 Sup. Ct. 1254, 30 L. Ed. 1230; Ford v. Fitchburg R. Co., 110 Mass. 240–243, 261, 14 Am. Rep. 598; Wuo-

tilla v. Duluth Lumber Co., 37 Minn. 153, 155, 33 N. W. 551; and O'Mellia v. Kansas City, etc., R. Co., 115 Mo. 205, 212, 218, 21 S. W. 503; and in none of these cases, except O'Mellia v. Kansas City, etc., R. Co., 115 Mo. 205, 21 S. W. 503, and Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 155, 33 N. W. 551, was the defense of assumption of risk insisted upon and discussed. The defense applied, considered, and determined in each of them was contributory negligence, and the distinction between the two defenses was not argued, considered, or determined. The opinions in these cases are not, therefore, determinative of the issue. In the opinions of the courts in O'Mellia v. Kansas City, etc., R. Co., 115 Mo. 205, 212, 218, 21 S. W. 503, Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 155, 33 N. W. 551, and Thorpe v. Missouri Pac. R. Co., 89 Mo. 650, 653, 2 S. W. 3, 58 Am. Rep. 120, and in some of the text-books cited the two defenses of assumption of risk and contributory negligence are confused or treated as interchangeable, and it is either assumed or stated that a servant can assume no risk the danger of which is not so imminent that no prudent person would continue in the employment and take the risk of the injury likely to result from it. But in other and later decisions the Supreme Courts of Minnesota and Missouri have clearly disregarded the theory that assumption of risk and contributory negligence are identical, and have expressly declared that by entering and continuing in the service an employé assumes not only such risks as are ordinarily incident to the employment, but also such extraordinary risks as become apparent to the employé by ordinary observation, or have been discovered and incurred without complaint, whether the danger from them was so imminent that no prudent person would incur it or not. Smith v. Railroad Co., 42 Minn. 87, 43 N. W. 968; Berger v. Railway Co., 39 Minn. 78, 38 N. W. 814; Devitt v. Railroad Co., 50 Mo. 302, 305; Epperson v. Postal Tel. Co., 155 Mo. 346, 372, 50 S. W. 795, 55 S. W. 1050; Roberts v. Missouri & Kansas Tel. Co., 166 Mo. 370, 379, 66 S. W. 155; Steinhauser v. Spraul, 127 Mo. 541, 562, 28 S. W. 620, 30 S. W. 102, 27 L. R. A. 441; Fleming v. St. Paul & Duluth R. Co., 27 Minn. 111, 114, 6 N. W. 448; Clark v. St. Paul & Sioux City R. Co., 28 Minn. 128, 9 N. W. 581; Greene v. Minneapolis & St. Louis R. Co., 31 Minn. 248, 17 N. W. 378, 47 Am. Rep. 785; Wilson v. Railway Co., 37 Minn. 326, 33 N. W. 908, 5 Am. St. Rep. 851.

It is said that if, by entering or continuing in the service, an employé may assume the risk of a defect which arises from the violation of the duty of the master to exercise ordinary care to provide a reasonably safe place or reasonably safe appliances, the master may be in large part relieved from the discharge of this duty, and may be led to furnish more defective places and appliances than he otherwise would do, and that for this reason the doctrine of assumption of risk ought not to be permitted to apply in cases in which the danger is not so imminent that prudent persons would not incur it. The answer to this contention is: (1) That the servant is constantly at liberty to accept or reject the employment, and may do so at any time in case the wages do not in his opinion compen-

sate him for the hazards as well as the work of his avocation; that he ought in the first instance to assume the known or obvious risks of the employment, because his constant use of the place and appliances necessarily makes him more familiar with· them than in the nature of things his master or inspector can ordinarily be; and (2) that by a simple complaint to his employer he may relieve himself from the assumption of the risk for a reasonable time to enable the master to remove the defect. But a discussion here of the question what the rule of law upon this subject ought to be will prove fruitless if that rule is already established by controlling authority, and the question whether or not it has become thus settled will, there· fore, first be considered. Is it the law of assumptio.ι of risk declared or sustained by the decisions of the Supreme Court which are controlling here, that the risks which may be lawfully assumed are those only from which the danger is so imminent that no prudent person would incur it? Is it the law generally adopted by the federal courts, and usually applied by the courts of the states? If it is, many courts have misconceived this rule, and the books are full of long lines of erroneous decisions upon this subject.

The danger from the negligence of fellow servants is not so imminent that persons of ordinary care and prudence will not and do not incur it, and yet the Supreme Court and the courts of America and England generally agree that, in the absence of statutory provisions to the contrary, an employé who, with others, enters the service of a common master, assumes the risk of their negligence. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. The danger from unblocked frogs upon a railroad is not so imminent that employés of ordinary care and prudence would not and do not engage and continue to operate trains over them, and yet the Supreme Court and other courts hold that such servants assume the risk of the injuries which they may entail. Southern Pac. Co. v. Seley, 152 U. S. 145, 155, 14 Sup. Ct. 530, 38 L. Ed. 391; Appel v. Buffalo, etc., R. Co., 111 N. Y. 550, 19 N. E. 93; Gillin v. Railroad Co., 93 Me. 80, 86, 44 Atl. 361; Wood v. Locke, 147 Mass. 604, 18 N. E. 578; Mayes, Adm'r, v. Chicago, R. I. & P. Ry. Co., 63 Iowa, 563, 14 N. W. 340, 19 N. W. 680. The danger of injury from low bridges on railroads is not so grave that servants of ordinary prudence and care would not and do not engage and continue to operate railroads through them, and yet they assume the risk of the injuries which result from these bridges. Myers v. Chicago, St. P., M. & O. Ry. Co., ·95 Fed. 406, 407, 37 C. C. A. 137, 138; Brossman v. Railroad Co., 113 Pa. 490, 6 Atl. 226, 57 Am. Rep. 479; Smith v. Railroad Co., 42 Minn. 87, 43 N. W. 968; Devitt v. Railroad Co., 50 Mo. 302, 305. The danger of injury from working on the greasy floor of a packing house, or from depressions in cement floors, is not so grave that persons of ordinary prudence would not and do not engage and continue to work upon them, and nevertheless the risk of such injuries is assumed by the servants who engage in the employments. Cudahy Packing Co. v. Marcan, 45 C. C. A. 515, 517, 106 Fed. 645, 647; Kleinest v. Kunhardt, 160 Mass. 230, 35 N. E. 458; Hoard v. Blackstone Mfg. Co., 177 Mass. 69, 71, 58 N. E. 180. The danger of in-

jury from tending the revolving knives of a relishing machine (Bohn Mfg. Co. v. Erickson, 5 C. C. A. 341, 343, 55 Fed. 943, 945), from swinging a loaded trunk from one car to another by means of a strap attached to it (Gowen v. Harley, 6 C. C. A. 190, 197, 56 Fed. 973, 980), from loading marble slabs upon their edges upon a wagon and drawing the wagon along the street (Motey v. Pickle Marble & Granite Co., 74 Fed. 155, 158, 20 C. C. A. 366, 369), from using a plugged iron gas pipe, rather than a wooden bar, to tamp dynamite into drilled holes (King v. Morgan, 48 C. C. A. 507, 511, 109 Fed. 446, 450), were not so imminent that prudent servants familiar with the duties of these various avocations would not and did not engage and continue to use the defective articles, and yet this court has held in all these cases that these servants assumed the risks of the injuries which resulted from them. All these decisions are inconsistent with the theory submitted to the jury in this case for their guidance, and expressed in the opinion of the majority of this court in Southern Pac. Co. v. Yeargin, and the decision in King v. Morgan was rendered subsequent to that in the Yeargin Case, so that the later opinion, as well as the earlier opinions of this court, are not in accord with the charge given to the jury by the court below. Are all these decisions wrong?

The doctrine of assumption of risk is placed by the authorities and sustained upon two grounds. That doctrine is that, while it is the duty of the master to exercise ordinary care to provide a reasonably safe place for the servant to work and reasonably safe appliances for him to use, and while, unless he knows or by the exercise of reasonable care would have known that this duty has not been discharged by the master, he may assume that it has been, and may recover for any injury resulting from the failure to discharge it, yet he assumes all the ordinary risks and dangers incident to the employment upon which he enters and in which he continues, including those resulting from the negligence of his master which are known to him, or which would have been known to a person of ordinary prudence and care in his situation by the exercise of ordinary diligence. The first ground upon which this rule of law rests is the maxim, Volenti non fit injuria. A servant is not compelled to begin or continue to work for his master. Ordinarily, he does not work for him under a contract for a stated time. He is at liberty to retire from his employment, and his master is free to discharge him, at any time. The latter constantly offers him day by day his wages, his place to work, and the appliances which he is to use. The former day by day voluntarily accepts them. By the continuing acceptance of the work and the wages he voluntarily accepts and assumes the risk of the defects and dangers which a person of ordinary prudence in his place would have known. No one can justly be held liable to another for an injury resulting from a risk which the latter knowingly and willingly consented to incur. Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 161, 29 N. E. 464, 31 Am. St. Rep. 537; Leary v. Boston & Albany Railroad, 139 Mass. 580, 2 N. E. 115, 52 Am. Rep. 733; Buzzell v. Laconia Mfg. Co., 48 Me. 113, 77 Am. Dec. 212; Mundle v. Mfg. Co., 86 Me. 400, 407, 30 Atl. 16.

The second ground upon which assumption of risk is based is that every servant who enters or continues in the employment of a master without complaint thereby either expressly or impliedly agrees with him to assume the risks and dangers incident to the employment which a person of ordinary prudence in his situation would have known by the exercise of ordinary diligence and care, and to hold his master free from liability therefor. Thus a master employs a servant to tear down or repair a building that is obviously in danger of falling upon the workman. The latter perceives the dangerous character of the place, and agrees upon the wages he will accept to perform it. The building falls upon, and injures him. He cannot recover of his employer, because he willingly assumed the risk. Another employs a servant to feed crude rubber between revolving rollers, and in pushing the material through the rollers his hand is caught and crushed. He cannot recover for his injury, because he voluntarily assumed the risk which the rollers and their use entailed. Sullivan v. Simplex Electrical Co., 178 Mass. 35, 39, 59 N. E. 645. A third employs a servant to paint hatchets under a rack upon which they are placed to dry. During his employment this rack which safely held the hatchets is removed, and a new one is substituted for it which is dangerous because the jar sometimes dislodges the hatchets and causes them to fall upon the workman below. Nevertheless the servant continues to paint beneath them. A hatchet falls upon and injures him. He cannot recover of his master for the injury, because he has voluntarily assumed the risk; and this is none the less true, says Mr. Justice Holmes, that fear of loss of his place induced him to stay. Lamson v. American Axe & Tool Co., 177 Mass. 144, 145, 58 N. E. 585, 83 Am. St. Rep. 267. In the first case the danger may have been so imminent that a person of ordinary prudence would not have entered upon or continued in the employment. But in the two other cases it certainly was not of that character. The truth is that, while assumption of risk and contributory negligence both apply to prevent a recovery in cases in which the servant has knowingly and willingly exposed himself to dangers too imminent for prudent persons to incur, they are neither identical in effect or coincident in extent, and the latter has no application and constitutes no defense in that great majority of cases in which assumption of risk is an impregnable bar to a recovery where prudent persons assume the obvious dangers of their employments which are neither imminent nor great. Assumption of risk is the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment and to relieve his master of liability therefor. Contributory negligence is the causal action or omission of the servant without ordinary care of consequences. The one rests in contract, the other in tort. Contributory negligence is no element or attribute of assumption of risk. The latter does not prevail because the servant was or was not negligent in making his contract and in exposing himself to the defect and danger which injured him, but because he voluntarily agreed to take the risk of them. No right of action in his favor in such a case can arise against the master, because the latter violates no duty in failing to protect the serv-

ant against risks and dangers which the latter has voluntarily agreed to assume and to hold the former harmless from.

This clear distinction between assumption of risk and contributory negligence has been repeatedly announced and constantly maintained in the federal courts and in most of the courts of the states. The law upon this subject which controls this case and all cases of this character in the federal courts is stated in Washington, etc., R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235, in the quotation which follows, and, so far as our investigation has extended, the rules of law thus announced have never been disregarded or modified by that court in any subsequent decision:

"Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employés. Nor are they bound to supply the best and safest or newest of those appliances, for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in this duty of precaution and care, he is responsible for any injury which may happen through a defect of machinery which was, or ought to have been, known to him, and was unknown to the employé or servant. But if the employé knew of the defect in the machinery from which the injury happened, and yet remained in the service and continued to use the machinery without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery. And further, if the employé himself has been wanting in such reasonable care and prudence as would have prevented the happening of the accident, he is guilty of contributory negligence, and the employer is thereby absolved from responsibility for the injury, although it was occasioned by the defect of the machinery, through the negligence of the employer."

Here the two defenses of assumption of risk and contributory negligence are separately stated, and the first failed because the servant "did not know that the belt in which he was caught had been recently and perhaps imperfectly repaired," and "was wholly unaware of the danger attendant upon putting on the belt by hand," while the defense of contributory negligence failed because the defendant failed to satisfy the jury that the servant was not exercising ordinary care in placing the belt upon the pulley.

In Union Pacific Ry. Co. v. O'Brien, 161 U. S. 451, 454, 456, 16 Sup. Ct. 618, 40 L. Ed. 766, the Supreme Court sustained a refusal to submit an instruction to the jury upon the express ground that it confused these two distinct defenses, assumption of risk and contributory negligence. Its words were:

"The second instruction was properly refused because it confused two distinct propositions, that relating to the risks assumed by an employé in entering a given service, and that relating to the amount of vigilance that should be exercised under given circumstances."

In Choctaw, Oklahoma & Gulf Railroad Co. v. McDade, 24 Sup. Ct. 24, 48 L. Ed. ——, a case in which the opinion was filed November 2, 1903, the Supreme Court says:

"The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in per-

forming such duties. The employé is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. The rule is subject to the exception that where a defect is known to the employé, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master notwithstanding the defect, and in such case cannot recover."

In Peirce v. Clavin, 82 Fed. 550, 553, 27 C. C. A. 227, 230, the Circuit Court of Appeals of the Seventh Circuit, in an opinion delivered by Judge Jenkins, said:

"The court below ignored wholly the doctrine of assumption of risk, and refused the instructions requested in that behalf, erroneously supposing that absolute knowledge of the defect which existed during the entire time of his service could not, under any circumstances, amount to an assumption of risk, but merely cast upon him greater care in the use, or in avoiding danger from the defective appliance. This is manifest error, for which we think the judgment must be reversed. The doctrine of assumption of risk is not to be confounded with the doctrine of contributory negligence; for, where the former doctrine is applicable, the servant may exercise the greatest care, and yet be precluded from recovery for an injury in the performance of his service, because the risk was assumed. Miner v. Railroad Co., 153 Mass. 398, 26 N. E. 994."

To the same effect is the opinion of the Circuit Court of Appeals of the Sixth Circuit in Narramore v. Cleveland, etc., Ry. Co., 96 Fed. 298, 301, 304, 305, 37 C. C. A. 499, 501, 504, 505, where Judge Taft, delivering the opinion of that court, said:

"Assumption of risk is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk. In such cases the acquiescence of the servant in the conduct of the master does not defeat a right of action on the ground that the servant causes or contributes to cause the injury to himself, but the correct statement is that no right of action arises in favor of the servant at all, for, under the terms of the employment, the master violates no legal duty to the servant in failing to protect him from dangers the risk of which he agreed expressly or impliedly to assume. The master is not, therefore, guilty of actionable negligence towards the servant." Pages 501, 502, 37 C. C. A., and page 301, 96 Fed.

After discussing various cases in which servants had entered or continued in the employment of their masters after discovering defects in machinery, he said:

"Assumption of risk is in such cases the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract. Contributory negligence in such cases is that action or nonaction in disregard of personal safety by one who, treating the known danger as a condition, acts with respect to it without due care of its consequences." Page 504, 37 C. C. A., and page 304, 96 Fed.

And again:

"Assumption of risk and contributory negligence approximate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra

compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences. One who does not use such care, and who, by reason thereof, suffers injury, is guilty of contributory negligence, and cannot recover, because he, and not the master, causes the injury, or because they jointly cause it." Page 505, 37 C. C. A., and page 304, 96 Fed.

In Miner v. Railroad Co., 153 Mass. 398, 402, 26 N. E. 994, the Supreme Judicial Court of that commonwealth held that where the plaintiff was guilty of no contributory negligence he might be barred from recovery by assumption of the risk. It said:

"Independently of any relation of master and servant, there may be a voluntary assumption of the risk of a known danger, which will debar one from recovering compensation in case of injury to person or property therefrom, even though he was in the exercise of due care. In other words, it may be consistent with due care to incur a known danger voluntarily and deliberately; and this may be so when the danger arises from the known or apprehended neglect or carelessness of others."

In Hesse v. Railroad Co., 58 Ohio St. 167, 169, 50 N. E. 354, 355, the Supreme Court of that state said:

"Acquiescence with knowledge is not synonymous with contributory negligence. One having full knowledge of defects in machinery with which he is employed may yet use the utmost care to avert the dangers which they threaten."

The unavoidable logical deduction from the principles and decisions to which we have adverted is that assumption of risk and contributory negligence are distinct and independent defenses, that the former rests in contract and upon the maxim, Volenti non fit injuria, and is not conditioned or limited by the probability or improbability, the imminence or the remoteness, of the danger from the risk assumed, or by the existence or by the absence of contributory or other negligence on the part of the party who undertakes to assume the risk, while contributory negligence is founded upon an absence of ordinary care which causes or contributes to the injury which is the basis of the suit. This conclusion is fortified by the numberless decisions in which the defense of assumption of risk has been sustained in which the plaintiffs were not guilty of contributory negligence, cases in which prudent persons in the exercise of ordinary care would have assumed and ordinarily did assume the very risks which were the subjects of the actions. Kohn v. McNulta, 147 U. S. 238, 241, 13 Sup. Ct. 298, 37 L. Ed. 150; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Tuttle v. Detroit & Milwaukee Ry. Co., 122 U. S. 189, 194, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Gibson v. Erie Ry. Co., 63 N. Y. 449, 20 Am. Rep. 552; Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722; Buckley v. Mfg. Co., 113 N. Y. 540, 21 N. E. 717; Engine Works v. Randall, 100 Ind. 293, 50 Am. Rep. 798; Berger v. Railway Co., 39 Minn. 78, 38 N. W. 814; Southern Pac. Co. v. Seley, 152 U. S. 145, 155, 14 Sup. Ct. 530, 38 L. Ed. 391; Appel v. Buffalo, etc., R. Co., 111 N. Y. 550, 19 N. E. 93; Gillin v. Railroad Co., 93 Me. 80, 86, 44 Atl. 361; Wood v. Locke, 147 Mass. 604, 18 N. E. 578; Mayes, Adm'r, v. Chicago, R. I. & P. Ry. Co., 63 Iowa, 563,

14 N. W. 340, 19 N. W. 680; Myers v. Chicago, St. P., M. & O. Ry. Co., 95 Fed. 406, 407, 37 C. C. A. 137, 138; Brossman v. Railroad Co., 113 Pa. 496, 6 Atl. 226, 57 Am. Rep. 479; Smith v. Railroad Co., 42 Minn. 87, 43 N. W. 968; Devitt v. Railroad Co., 50 Mo. 302, 305; Cudahy Packing Co. v. Marcan, 45 C. C. A. 515, 517, 106 Fed. 645, 647; Kleinest v. Kunhardt, 160 Mass. 230, 35 N. E. 458; Hoard v. Blackstone Mfg. Co., 177 Mass. 69, 71, 58 N. E. 180; Bohn Mfg. Co. v. Erickson, 5 C. C. A. 341, 343, 55 Fed. 943, 945; Gowen v. Harley, 6 C. C. A. 190, 197, 56 Fed. 973, 980; Motey v. Pickle Marble & Granite Co., 74 Fed. 155, 158, 20 C. C. A. 366, 369; King v. Morgan, 48 C. C. A. 507, 511, 109 Fed. 446, 450; Smith v. Railroad Co., 42 Minn. 87, 43 N. W. 968; Fisk v. Railroad Co., 158 Mass. 238, 33 N. E. 510; Glover v. Bolt Co., 153 Mo. 327, 55 S. W. 88; Gibbons v. Navigation Co., 175 Mass. 212, 55 N. E. 987; Higgins Carpet Co. v. O'Keefe, 79 Fed. 900, 25 C. C. A. 220; Epperson v. Postal Tel. Cable Co., 155 Mo. 346, 358, 373, 378, 50 S. W. 795, 55 S. W. 1050; Roberts v. Missouri & Kansas Tel. Co., 166 Mo. 370, 379, 66 S. W. 155; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102, 27 L. R. A. 441; Campbell v. Dearborn, 175 Mass. 183, 185, 55 N. E. 1042; Barry v. New York Biscuit Co., 177 Mass. 449, 452, 59 N. E. 75; American Dredging Co. v. Walls, 84 Fed. 428, 28 C. C. A. 441; Hunt v. Kile, 98 Fed. 49, 53, 38 C. C. A. 641, 645; Ford v. Mount Tom Sulphide Pulp Co., 172 Mass. 544, 546, 52 N. E. 1065, 48 L. R. A. 96; Sullivan v. Simplex Electrical Co., 178 Mass. 35, 39, 59 N. E. 645; Demers v. Marshall, 178 Mass. 9, 12, 59 N. E. 454; Whalen v. Whitcomb, 178 Mass. 33, 34, 59 N. E. 666; Hall v. Wakefield, etc., Street Ry. Co., 178 Mass. 98, 59 N. E. 668. Nor is the distinction between assumption of risk and contributory negligence less marked, nor is the former defense less applicable in cases of defects and dangers which arise during the continuance of the employment than in those involving defects which exist when the employé enters upon the service. The suggestion that in the former class of cases there is no consideration for the contract of assumption because the wages are not increased with the hazards is not persuasive. The answer to it is: (1) The doctrine of assumption of risk is founded on the maxim, Volenti non fit injuria, as well as upon the express or implied contract arising from the employment, and continuance in the employment after new defects and dangers become obvious is conclusive evidence of a willing assumption of the risk which they entail; and (2) since, in ordinary employments, contracts for times certain do not exist, and either party is at liberty to terminate the service at any time, there is in fact a constantly recurring daily offer and daily acceptance of the risks of the known or obvious dangers and defects of the place and of the appliances, and of the wages tendered to induce an assumption of the work and the hazards. The reason which underlies the entire rule is that the servant who is constantly working in the place provided for him and daily using the tools and appliances furnished to him is more likely to know and to appreciate the dangers from defects in them than the master or his inspector, who, in the very nature of things, cannot see and know them so frequently and

intimately as the employé who constantly uses them. This was the reason which induced the application of this rule to defects and dangers existing when servants enter upon their engagements, and when, in the nature of things, they are far less familiar with the defects and dangers incident to their avocations than they subsequently become after they have been long in the service. The reason of the rule applies with much greater force to dangers which arise and become known or are obvious to servants during their employment, because they have then become more familiar with their place and their appliances, and have earlier and better means of knowledge, and generally a better knowledge of changes in them, and of the effect and dangers of such changes, than they had of the dangers and defects incident to the original employment, and than their master or his inspectors can possibly obtain. Hence the rule declared by the Supreme Court in Washington, etc., Railroad Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235, that if an injury is inflicted upon an employé on account of a defect and danger which arose during his employment, yet "if the employé knew of the defect in the machinery from which the injury happened, and yet remained in the service and continued to use the machinery without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery." Cases farther illustrating this rule are Steinhauser v. Spraul, 127 Mo. 541, 545, 562–564, 28 S. W. 620, 30 S. W. 102, 27 L. R. A. 441, where a servant was held to have assumed the risk of a more dangerous ladder, which, during her employment, had been substituted for one that she had formerly used; Roberts v. Missouri & Kansas Tel. Co., 166 Mo. 370, 375, 378, 66 S. W. 155, in which the cross-arm of a telegraph pole which broke and precipitated the plaintiff to the ground had become rotten during his employment; Campbell v. Dearborn, 175 Mass. 183, 184, 55 N. E. 1042, where the plaintiff was held to have assumed the risk from the piling during his employment of a long board over a short one so that it caused his fall; Johnson v. Devoe Snuff Co., 62 N. J. Law, 417, 41 Atl. 936, 938, in which the servant during his employment suffered injury because he was subjected to the increased risk of grinding green tobacco by means of rollers suitable only to the grinding of dry tobacco, and the court said that "the doctrine of assumption of risks applies as well to those which first arise or become known to the servant during the service as to those in contemplation at the original hiring; and therefore a servant who, on discovering these dangers, makes no complaint or protest to the master, but continues in the service, assumes the risks, so that he cannot complain though injury follows"; Ford v. Mount Tom Sulphide Pulp Co., 172 Mass. 544, 546, 52 N. E. 1065, 48 L. R. A. 96, in which the plaintiff was held to have assumed the risk of injury from a set screw which was placed in a revolving shaft during his employment; and Brossman v. Railroad Co., 113 Pa. 490, 6 Atl. 226, 57 Am. Rep. 479, in which the signals of low bridges were abandoned during the plaintiff's service, and he was held to have assumed the risk of the increased hazard.

The authorities and opinions to which reference has now been made have forced our minds irresistibly to the conclusion that the following rules of law have become irrevocably settled by the great weight of authority in this country, and by the opinions of the Supreme Court, which, upon well-settled principles, must be permitted to control the opinion and action of this court:

A servant by entering or continuing in the employment of a master without complaint assumes the risks and dangers of the employment which he knows and appreciates, and also those which an ordinarily prudent person of his capacity and intelligence would have known and appreciated in his situation.

A servant who knows, or who by the exercise of reasonable prudence and care would have known, of the risks and dangers which arose during his service, but who continues in the employment without complaint, assumes those risks and dangers to the same extent that he undertakes to assume those existing when he enters upon the employment.

Among the risks and dangers thus assumed are those which arise from the failure of the master to completely discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances and tools to use.

Assumption of risk and contributory negligence are separate and distinct defenses. The one is based on contract, the other on tort. The former is not conditioned or limited by the existence of the latter, and is alike available whether the risk assumed is great or small, and whether the danger from it is imminent and certain or remote and improbable.

The court below fell into an error when it instructed the jury that although the plaintiff continued in the employment of the defendant by the side of the visible unguarded gearing with full knowledge that the cogs which injured her were uncovered, still she could not be held to have assumed the risk of working by their side unless the danger from them was so imminent that persons of ordinary prudence would have declined to incur it under similar circumstances. Choctaw, Oklahoma & Gulf R. R. v. McDade, 24 Sup. Ct. 24, 48 L. Ed. —— (opinion filed November 2, 1903).

There is another alleged error specified. A preliminary question for the judge always arises at the close of the evidence before a case can be submitted to the jury. That question is, not whether or not there is any evidence, but whether or not there is any substantial evidence upon which a jury can properly render a verdict in favor of the party who produces it. Cole v. German Sav. & Loan Society (C. C. A.) 124 Fed. 113, 122; Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 105, 52 C. C. A. 48, 52, 53, 57 L. R. A. 712; Railway Co. v. Belliwith, 83 Fed. 437, 441, 28 C. C. A. 358, 362; Association v. Wilson, 100 Fed. 368, 370, 40 C. C. A. 411, 413; Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Laclede Fire Brick Mfg. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 60 Fed. 351, 354, 9 C. C. A. 1, 4;

Gowen v. Harley, 56 Fed. 973, 6 C. C. A. 190; Motey v. Granite Co., 74 Fed. 155, 157, 20 C. C. A. 366, 368.

The factory act of Missouri (2 Rev. St. 1899, § 6433) does not abolish the defense of assumption of risk in cases which fall under its provisions. In this respect it differs from the act of the Congress of the United States (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), which requires cars engaged in interstate commerce to be equipped with automatic couplers. Congress in that act expressly provided that in case the railroad companies failed to comply with its terms the employés should not be deemed to have assumed the risk thereby occasioned. Act March 2, 1893, c. 196, § 8, p. 532, 27 Stat. 532 [U. S. Comp. St. 1901, p. 3176]. The Legislature of Missouri had power to apply a similar provision to cases in which employers failed to keep their machinery safely and securely guarded, but they did not do so. The negligence of the master to safely and securely guard his machinery in accordance with the provisions of the law of Missouri is of the same nature as his negligence in providing a reasonably safe floor or ax or other tool or appliance, and there is no reason why an action for a resulting injury should not be subject to the defense of assumption of risk in the one case to the same extent as in the other. And so it is under the law here under consideration. The factory act of Missouri (2 Rev. St. 1899, § 6433) does not abolish the defense of assumption of risk in cases in which the absence of the guards and the risks and dangers from the gearing and machinery are obvious or well known to the employé and he enters or continues in the service without complaint. O'Maley v. South Boston Gas Light Co., 158 Mass. 135, 138, 139, 32 N. E. 1119, 47 L. R. A. 161; Lore v. American Mfg. Co., 160 Mo. 608, 624, 61 S. W. 678; White v. Wittemann Lith. Co., 131 N. Y. 631, 635, 30 N. E. 236; Higgins Carpet Co. v. O'Keefe, 51 U. S. App. 74, 80, 79 Fed. 900, 902, 25 C. C. A. 220, 222; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; Graves v. Brewer, 4 App. Div. 327, 38 N. Y. Supp. 566.

The question here, therefore, is: Was there any substantial evidence at the close of the trial below which would have warranted a finding and verdict by the jury that the plaintiff did not voluntarily assume the risk of the uncovered gearing? Of course, the question whether or not a servant has willingly assumed a risk of the service is, like all questions of fact, for the jury when the evidence is conflicting or when the deductions from it are doubtful, and, as this is usually the case in the trial of this issue, as in the trial of all other issues of fact, the general rule becomes that this question is ordinarily for the jury.

There are many cases in which the danger from the condition of the place or of the appliances is uncertain or recondite, as in Ford v. Fitchburg R. Co., 110 Mass. 240–243, 261, 14 Am. Rep. 598, where an explosion which could not have been reasonably anticipated resulted from a defect in a boiler which was known to the servant, and from such cases the rule arises that mere knowledge of the defect in the place or in the appliances does not necessarily establish the fact as a matter of law that the employé assumed the risk which the defect entailed.

There are other cases, like Coombs v. New Bedford Cordage Co.,

102 Mass. 572, 3 Am. Rep. 506, in which a boy less than 14 years old and unacquainted with machinery was on the second day of his employment set to work in a noisy factory to break off ribbon, where he was required to draw his hands apart so that one of them would frequently come near an uncovered gearing, to which the rule applies that a servant does not assume the risk of a known defect unless he appreciates, or unless a person of his intelligence and capacity by the exercise of ordinary prudence would have appreciated, the danger arising from it.   The facts of the following cases bring them within these rules:   Cook v. Railway Co., 34 Minn. 45, 24 N. W. 311; Daley v. American Printing Co., 150 Mass. 77, 22 N. E. 439; Goodlett v. Louisville & Nashville R. Co., 122 U. S. 391, 411, 7 Sup. Ct. 1254, 30 L. Ed. 1230; Patterson v. Railroad Co., 76 Pa. 389, 394, 18 Am. Rep. 412; Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 157, 29 N. E. 464, 31 Am. St. Rep. 537; Mahoney v. Dore, 155 Mass. 513, 30 N. E. 366; Lawless v. Connecticut River R. Co., 136 Mass. 1; Ferren v. Old Colony R. Co., 143 Mass. 197, 9 N. E. 608; Myers v. Hudson Iron Co., 150 Mass. 125, 22 N. E. 631, 15 Am. St. Rep. 176.

The cases of Northern Pacific R. Co. v. Mares, 123 U. S. 717, 720, 8 Sup. Ct. 321, 31 L. Ed. 296; Hough v. Ry. Co., 100 U. S. 224, 225, 25 L. Ed. 612; Kane v. Northern Central R. Co., 128 U. S. 91, 94, 9 Sup. Ct. 16, 32 L. Ed. 339; Snow v. Railroad Co., 90 Mass. 441, 447, 448; Francis v. Kansas City, etc., R. Co., 127 Mo. 658, 28 S. W. 842, 30 S. W. 129; Thorpe v. Missouri Pac. R. Co., 89 Mo. 650, 2 S. W. 3, 58 Am. Rep. 120; and O'Mellia v. Kansas City, etc., R. Co., 115 Mo. 205, 21 S. W. 503—to which our attention has been called, are not in point upon the question now under consideration, because the discussions and decisions in these cases are either devoted to the defense of contributory negligence exclusively, or they so confuse the two separate defenses of assumption of risk and contributory negligence as to be without persuasive force upon the issue now in hand.   Thus in Kane v. Northern Central R. Co., 128 U. S. 91, 94, 9 Sup. Ct. 16, 32 L. Ed. 339, there was no defense of assumption of risk in the case.   That defense had been stricken down by a complaint of the defect which the brakeman had made to his conductor.   His freight train had started at midnight.   When it had gone 20 miles he discovered that a step was missing from one of the cars, and called the conductor's attention to it.   The latter promised to drop the car at the coalyard or junction beyond them if upon examining his manifests he found it did not contain perishable freight.   About 4 or 5 o'clock in the morning, and before they had reached the coalyard, the brakeman started to go along the train to his post, and in letting himself down from the car whose step was missing he forgot that fact and fell.   The Supreme Court well said, "An employé upon a railroad train, likely to meet other trains, owes it to the public as well as to his employer not to abandon his post unnecessarily," and that the danger was not so imminent as to subject him to the charge of recklessness in remaining at his post after he had complained and received the conductor's promise.   The plaintiff in the case at bar was not engaged in a quasi public employment, and owed the public no duty which required her to con-

tinue to operate the forming machine for six weeks after she discovered the defect of which she now complains. She gave no notice and made no complaint of it to her employer. What a striking difference the facts of the two cases present, and how well they illustrate the rule that general expressions in opinions should be read in the light of the facts presented and the issues under consideration, and should not be indiscriminately applied to dissimilar facts and issues that were not presented! It is suggested that the plaintiff was only 20 years of age, but she had been employed in factories for many months, and the danger from mashing cogs that had been visible to her for six weeks was as apparent and appreciable to a woman of her age and experience as to a person of greater age or more extended experience. She could not fail to know as well at 20 as at 40 years of age that fire would burn, or mashing cogs would crush her fingers. A person 20 years of age assumes the risks and dangers that he actually knows and appreciates, and those that are so apparent that one of his age and capacity would in the exercise of ordinary care know and appreciate them to the same extent as one of more mature years. Bohn Mfg. Co. v. Erickson, 5 C. C. A. 341, 344, 55 Fed. 943, 946; Engine Works v. Randall, 100 Ind. 293, 298, 300, 50 Am. Rep. 798; Berger v. Ry. Co., 39 Minn. 78, 38 N. W. 814; Sullivan v. Mfg. Co., 113 Mass. 396; Fones v. Phillips, 39 Ark. 17, 38, 43 Am. Rep. 264.

Now, while it is true, as the decisions to which we have adverted declare, that mere knowledge of a defect by a servant who continues in the employment does not necessarily establish the fact as a matter of law that he has assumed the risk it entails, and while it is also true that he does not assume such a risk unless an ordinarily prudent person of his capacity in his situation would have appreciated the danger from it, it is equally true that a servant who enters or continues in the employment of his master in the presence of visible or obvious defects and plain or apparent dangers from them, which he knows or appreciates, or which an employé of his intelligence and capacity would by the exercise of ordinary care and prudence know and appreciate, assumes the risk of these dangers, and he cannot be heard to say that he did not appreciate them, and when the uncontradicted evidence establishes these facts no case arises in his favor, no question remains for the jury, and it is the duty of the court to peremptorily instruct them to return a verdict for the master. This is a familiar and well-established rule of law. It is sustained and illustrated by the following cases, in which courts have held that it was the duty of the trial court to direct a verdict for the employer: Higgins Carpet Co. v. O'Keefe, 51 U. S. App. 74, 80, 79 Fed. 900, 902, 25 C. C. A. 220, 222, in which a boy 15 years of age who had been at work in a room with a picking machine was assigned to feed it, and permitted his hand to slip into the exposed cogs, which the factory act of New York required the master to keep covered; Buckley v. Mfg. Co., 113 N. Y. 540, 21 N. E. 717, wherein a boy 12 years old slipped and threw his fingers into exposed cogs; Engine Works v. Randall, 100 Ind. 293, in which a boy 19 years of age permitted his hands to engage with revolving cogs; Berger v. Ry. Co., 39 Minn. 78, 38 N. W. 814, wherein a boy in feeding rollers

in a boilermaking shop permitted his hand to slip between them; Kleinest v. Kunhardt, 160 Mass. 230, 35 N. E. 458, wherein the servant, fell upon a slippery floor and threw his hand against a pulley, which injured it; Tuttle v. Detroit & Milwaukee Railway, 122 U. S. 189, 195, 7 Sup. Ct. 1166, 30 L. Ed. 1114, in which the Supreme Court held that a brakeman could not be heard to say that he did not appreciate the dangers of a sharp curve in the railroad track, from which he suffered injury; Kohn v. McNulta, 147 U. S. 238, 241, 13 Sup. Ct. 298, 37 L. Ed. 150, in which the same court held that double deadwoods on cars were obvious defects and the danger from them was apparent; Southern Pac. Co. v. Seley, 152 U. S. 145, 154, 155, 14 Sup. Ct. 530, 38 L. Ed. 391, wherein that court made the same holding, and entered the same judgment, in an action for injuries caused by an unblocked frog; King v. Morgan, 48 C. C. A. 507, 509, 109 Fed. 446, 448, a case of an injury from the use of an iron tamping bar instead of a wooden one; Cudahy Packing Co. v. Marcan, 45 C. C. A. 515, 517, 106 Fed. 645, 647, where a block on which a boy 17 years of age was standing slipped upon the greasy floor and caused him to throw his hand into a hasher; O'Maley v. South Boston Gas Light Co., 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161, wherein a servant wheeling coal fell from an unprotected way which the factory act of Massachusetts required the master to keep guarded; Glover v. Bolt Co., 153 Mo. 327, 55 S. W. 88, in which a boy engaged in pulling iron from a pile fell and placed his fingers between closing shears; Mundle v. Mfg. Co., 86 Me. 400, 404, 30 Atl. 16, in which a servant received a sliver in her foot from the floor on which she was working; American Dredging Co. v. Walls, 84 Fed. 428, 429, 28 C. C. A. 441, 442, wherein the servant slipped, fell, and his hand was caught in the machinery because there were no cleats on a slippery inclined table upon which he was required to go to oil the machinery; Hoard v. Mfg. Co., 177 Mass. 69, 71, 58 N. E. 180, and Whalen v. Whitcomb, 178 Mass. 33, 34, 59 N. E. 666, wherein servants were injured by depressions in the floors on which they were working; Sullivan v. Simplex Electrical Co., 178 Mass. 35, 39, 59 N. E. 645, in which the hands of a boy 19 years of age who was feeding rubber between rollers were caught and injured by the rollers; Ford v. Mount Tom Sulphide Pulp Co., 172 Mass. 544, 546, 52 N. E. 1065, 48 L. R. A. 96, wherein the servant was injured by a set screw in a revolving shaft which had been placed there during his service; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Gowen v. Harley, 56 Fed. 973, 980, 6 C. C. A. 190, 197; Motey v. Pickle Marble & Granite Co., 20 C. C. A. 366, 369, 74 Fed. 155, 158; McCain v. Chicago, B. & Q. R. Co., 76 Fed. 125, 126, 22 C. C. A. 99, 100; Brossman v. Railroad Co., 113 Pa. 490, 6 Atl. 226, 57 Am. Rep. 479; Smith v. Railroad Co., 42 Minn. 87, 43 N. W. 968; Devitt v. Railroad Co., 50 Mo. 302, 305; Moon Anchor Consol. Gold Mines v. Hopkins, 111 Fed. 298, 304, 49 C. C. A. 347, 353; Fisk v. Railroad Co., 158 Mass. 238, 33 N. E. 510; Gibbons v. Navigation Co., 175 Mass. 212, 55 N. E. 987; Chesapeake & Ohio R. Co. v. Hennessey, 38 C. C. A. 307, 311, 96 Fed. 713, 717; Johnson v. Devoe Snuff Co., 62 N. J. Law, 417, 41 Atl. 936, 938; Epperson v. Postal Tel.

Cable Co., 155 Mo. 346, 358, 373, 50 S. W. 795, 55 S. W. 1050; Roberts v. Missouri & Kansas Tel. Co., 166 Mo. 370, 379, 66 S. W. 155; Steinhauser v. Spraul, 127 Mo. 541, 562, 28 S. W. 620, 30 S. W. 102, 27 L. R. A. 441; Campbell v. Dearborn, 175 Mass. 183, 55 N. E. 1042; Barry v. New York Biscuit Co., 177 Mass. 449, 452, 59 N. E. 75; Gillin v. Railroad Co., 93 Me. 80, 86, 44 Atl. 361; Wood v. Locke, 147 Mass. 604, 18 N. E. 578; Mayes v. Chicago, R. I. & P. Ry. Co., 63 Iowa, 563, 14 N. W. 340, 19 N. W. 680; Hunt v. Kile, 98 Fed. 49, 53, 38 C. C. A. 641, 645; Lamson v. American Axe & Tool Co., 177 Mass. 144, 58 N. E. 585, 83 Am. St. Rep. 267; Demers v. Marshall, 178 Mass. 9, 12, 59 N. E. 454; Hall v. Wakefield, etc., St. Ry. Co., 178 Mass. 98, 59 N. E. 668.

The record in the case at bar has been searched in vain for any fact or testimony adequate to withdraw it from the principles of law established by this strong current of decision, or to distinguish it from the cases which have been cited to illustrate the rule. This plaintiff was a young woman 20 years of age. The presumption is that she was possessed of ordinary intelligence and ability. She had' been at work in factories for more than a year, and in the establishment of the defendant for more than six months. She knew that the gearing which injured her had been covered before Christmas, and that it was uncovered from that time until she was injured on February 13, 1902. She had worked at this machine by the side of the exposed mashing cogs from 10 to 15 minutes every day during the six weeks that they remained uncovered. She testified that she did not know that it was dangerous to run the gearing uncovered, but she knew the action of the lever, the greasy condition of its handle, its proximity to the mashing cogs, and she could no more have failed to know and to appreciate that the revolving cogs would crush her hand if she permitted it to slip between them than she could have failed to appreciate that boiling water would scald or fire would burn. One cannot be heard to say that he does not know or appreciate a danger whose knowledge and appreciation are so unavoidable to a person of ordinary intelligence and prudence in a like situation. King v. Morgan, 48 C. C. A. 507, 509, 109 Fed. 446, 448; Moon Anchor Consol. Gold Mines v. Hopkins, 49 C. C. A. 347, 353, 111 Fed. 298, 304; Sullivan v. Simplex Electrical Co., 178 Mass. 35, 39, 59 N. E. 645; Buckley v. Mfg. Co., 113 N. Y. 540, 21 N. E. 717. The machinery, the cogs, the slippery lever, and their relation to each other, were open, visible, known. There was nothing recondite, imperceptible, uncertain, in the danger impending from them. It was plain and certain that if the employé permitted her hand to slip between the revolving cogs that hand would be injured. The defect of the unguarded gearing was obvious, the danger from it was apparent, and, without a disregard of the rules to which we have adverted and the decisions of the Supreme Court and of the other courts of the country to which reference has been made, there is no escape from the conclusion that the evidence in this case established without contradiction or dispute the facts that the plaintiff, by continuing in her employment without complaint, in the presence of an obvious and known defect and of a plain and apparent danger,

assumed the risk of the injury which she sustained, so that she never had any cause of action against the defendant; and the court below should have so instructed the jury. The judgment below is accordingly reversed, and the case is remanded to the Circuit Court for a new trial.

THAYER, Circuit Judge (dissenting). I do not concur in the foregoing opinion. The laws of Missouri (Rev. St. 1899, § 6433) required the defendant company to keep the gearing which occasioned the plaintiff's injury "safely and securely guarded when possible" for the protection of its employés. This statute was enacted in pursuance of a sound public policy; that is to say, to insure, as far as possible, the safety of the many thousand artisans and laborers who are daily employed in mills and factories throughout the state, and while so employed are exposed to unnecessary risks of getting hurt if belting, gearing, drums, etc., in the establishments where they work are left uncovered when so situated that they may be covered readily. The act was inspired by the same motives which induced the Congress of the United States (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) to require cars to be equipped with automatic coupling appliances when it was discovered that hundreds of brakemen were annually killed or made cripples for life by the use of the old-fashioned couplers that do not couple by impact. A wise public policy demands that as far as possible human life shall be preserved, and that there shall not be in any community a large class of persons who are unable to earn a livelihood because they have become maimed and crippled through exposure to unnecessary risks. The statute in question is not only a wise measure of legislation, but was prompted by a humane spirit. For these reasons it should not be so applied or construed by the courts as to defeat the objects which the Legislature had in view, nor in such a way as to render it less efficient than it was intended to be in the promotion of such objects.

It is conceded that the defendant company neglected to perform its statutory duty; it left the gearing, which inflicted the injury, uncovered for several weeks, although it could have been covered easily, and was covered, when the plaintiff below entered its service; and as the result of such neglect the plaintiff below, a girl of 20, who had scarcely reached years of discretion, sustained a severe and painful injury. The majority of the judges of this court hold that she cannot recover because, by working at the machine for 10 or 15 minutes each day for about six weeks after the covering of the gearing had been removed, she consciously entered into a contract with the defendant company, although her wages were not increased, that she would assume the risk of getting hurt by the uncovered gearing, which she did not assume when she entered its service, and that she would absolve it from all liability. They hold, further, that although the plaintiff may not in fact have appreciated or foreseen the risk and danger which she incurred by working at the machine with the gearing uncovered, yet, because in their opinion a person of her age and intelligence ought to have appreciated it, they will infer that, with a full appreciation of the risk, she voluntarily entered into

a contract with her master to assume it. By this ruling they impose on the servant the duty of being astute to ascertain risks and dangers incident to defects in tools and appliances which the master has provided, and in effect absolve the master in a great measure from his obligation, when providing tools and appliances, to exercise care and foresight for the protection of his servants, this being a, duty which from time immemorial the law has devolved on the master. Texas & P. Ry. Co. v. Archibald, 170 U. S. 665, 671, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188. Moreover, being of the opinion, apparently, that it would be quite unsafe to leave a jury of ordinary persons (who are familiar with the manner in which persons like the plaintiff, and in her situation, ordinarily think and act) to determine under the facts of this case whether the plaintiff did for a consideration voluntarily enter into the contract aforesaid, they declare that the jury had no right to decide that question, it being purely a question of law, with which the jury had no concern. And, lastly, they assert that when this plaintiff observed that the gearing in question was uncovered it was her duty to have thrown up her situation and quit the defendant's employment, or to have secured a promise from her employer to restore the covering within a short period, and that, inasmuch as she did not quit work or secure such promise, they, rather than a jury, will infer that she promised of her own free will to assume the risk. I do not concur in either of these propositions.

I do not regard the question whether "contributory negligence" and "assumption of risk," considered as defenses to an action for personal injuries, are identical or are different defenses as of much practical importance. That is rather a question for the schoolmen. It matters very little whether we say of a servant who has used a defective tool or appliance, which the master has supplied, with a full knowledge of the defect and a full appreciation of the danger incident to its use, that such servant is as much at fault as the master and is guilty of contributory negligence, or whether we say that he has agreed to assume the risk and absolve the master from liability. The result, as respects the master's liability, is the same in whatever way we may choose to designate the defense.

The other questions, however, that are discussed in the opinion, and are decided in the manner above stated, are of great moment, affecting, as they do, the rights of thousands of people who are daily engaged in service and are liable to sustain injuries because reasonable precautions are not taken, by those who employ them, to prevent their being injured. In view of the motives which usually influence the conduct of men, I think it is certain that employers will be less careful in inspecting tools and machinery which they provide for their employés, less prompt in remedying defects therein when they are discovered, and less mindful of the discharge of the duties imposed on them by such a statute as the one involved in the case at bar, and other police regulations of that sort which may be made in the future, if the doctrine is established that by using an implement or machine having visible defects, although the risk of injury is not overshadowing and imminent, a servant thereby assumes the risk and agrees to hold the master blameless if he is hurt. The other doctrine, that the servant cannot rely upon the master to discharge

the duty which the law imposes upon him to provide tools, appliances, and a place to work that is reasonably safe, but must be astute to discover defects therein and to appreciate dangers incident thereto, and that he must either quit work or secure the master's promise to supply better tools and safer appliances, or else be denied compensation for any injury which he may sustain, is also a doctrine that is eminently well calculated to make employers less vigilant in the discharge of their duties to their employés, and less ready to obey the provisions of such laws as may be enacted to prevent the occurrence of distressing accidents. It is reasonably certain that employers will not be as willing and prompt to incur the expense of furnishing new and safer tools, and of providing additional safeguards against dangerous machinery, when they are advised that they can lay before their employés the alternative of throwing up their jobs or continuing to work with tools and machinery as they are, at their own risk, and can compel them to take their choice. In very many instances, no doubt, such expenditures as might be made and ought to be made to afford greater protection to persons engaged in service will be deferred to a more convenient season, and in the meantime injuries will be sustained that might have been avoided. When forced to the alternative of losing his situation or working with defective tools or in a situation that might be made safer, many an employé will choose the latter. Besides, many servants, especially those who are most worthy, will hesitate to make a demand for better and safer implements when they ought to be supplied, or to have the place where they work made safer, for fear of falling into disfavor with their employers and being classed as malcontents and grumblers. Another large class of persons who are young and venturesome, or by disposition and temperament are not prone to anticipate injuries or to appreciate dangers to which they are exposed, will continue to work with tools or appliances when they have become unsafe, utterly unconscious of the risks which they incur. Take the case at bar as an example. It is by no means improbable that the plaintiff, although she worked 10 or 15 minutes each day at the forming machine with the gearing uncovered, for several weeks before she was hurt, had never thought of such an accident as eventually befell her, and had never had a realizing sense or a conscious appreciation of the danger which my associates say, with so much confidence, she must have had, and accordingly decline to permit a jury to pass upon the question. And yet the Legislature foresaw that such an accident might happen, and for the protection of persons like the plaintiff enjoined upon the defendant company the duty of covering these gearings and keeping them covered so that such accidents might not happen. In other words, the Legislature made it the duty of the defendant company to protect the plaintiff from the risk to which they caused her to be exposed.

On grounds of public policy, therefore, and to insure the faithful discharge by employers of the duty which the law devolves on them, and to prevent them from forcing their employés to assume risks which they of right ought to assume, the law ought to be as it was declared by the learned trial judge, that the plaintiff was not debarred from recovering compensation for the injuries which she

sustained, merely by reason of the fact that she had worked at the forming machine at intervals with the gearing uncovered, unless the jury believed that the risk of getting hurt was so grave and imminent that a person of ordinary prudence would not have incurred it. The principle so enunciated being just, both as it affects masters and servants, in that it places the responsibility for defective tools and appliances where it of right belongs, and the rule announced being easy of application and one that will tend to the protection of life and limb, there is, in my judgment, abundant authority to sustain it.

In the case of Northern Pacific Railroad Co. v. Mares, 123 U. S. 710, 717, 720, 8 Sup. Ct. 321, 31 L. Ed. 296, a brakeman in the employ of a railroad company had been injured in consequence of the negligence of the company in retaining in its service an engineer who was known to be careless and negligent. On the trial of the case the defendant company asked the court to instruct the jury that "if the plaintiff knew or had the opportunity of knowing, before his fall from the car in question, that Bassett [the engineer] was an unfit or unsafe man to run the engine in question, in that case it was the plaintiff's duty to refuse to work with him any longer, and his failure to do so would prevent him from recovering." The trial court refused this instruction, and the Supreme Court of the United States, speaking by Mr. Justice Matthews, said that the trial judge was clearly right in refusing the instruction; that the duty of the plaintiff under the circumstances was not to be determined by the single fact of his knowledge of the danger he incurred by continuing to serve with a co-employé known by him to be an unfit and incompetent person; that it was enough for the court to say, as it did, that a failure of the plaintiff to refuse to work, in view of the knowledge which he had of the engineer's incompetency, might be negligence on his part, and that it was for the jury to say, from all the attending circumstances, whether his failure to do so was in fact contributory negligence.

In the case of Kane v. Northern Central Railway, 128 U. S. 91, 94, 9 Sup. Ct. 16, 32 L. Ed. 339, the plaintiff, Kane, had been injured by reason of the fact that a step was missing from one of the cars of the train upon which he was working, which rendered the car defective. It appeared that the plaintiff became aware of the defect in the car some time before he was injured, and that after such knowledge he continued in the discharge of his regular duties. The Supreme Court, speaking by Mr. Justice Harlan, declared that it could not be said that the plaintiff was guilty of contributory negligence in staying upon the train in the capacity of a brakeman after he had observed that a step was missing from one of the cars; that an employé upon a railroad owes it to the public as well as to his employer not to abandon his post unnecessarily; and that the danger arising from the defective car was not so imminent as to subject him to the charge of recklessness in remaining at his post under the circumstances disclosed in that case; citing, in support of his statement that the plaintiff was not bound to quit his employer's service unless the risk of getting hurt was imminent, the previous decision of the Supreme Court of the United States in Hough v. Railroad Company, 100 U. S. 213, 224, 225, 25 L. Ed. 612.

In the case of Southern Pacific Company v. Yeargin, 48 C. C. A. 497, 109 Fed. 436, this court expressly decided that a servant ought not to be regarded as having assumed the risk of injury merely because he remains in service with knowledge that certain implements and appliances are out of repair or that there is a defect in equipment; that the true test by which to determine, in such cases, whether the servant is entitled to recover because of the defect, is to ascertain whether the risk which he incurred by working with defective tools or appliances was so obvious and imminent that a prudent person would not have incurred it. Reasons were stated at considerable length, in that opinion, why this should be the rule, and why a servant, when he discovers a defect in tools and appliances, should not be compelled to quit his master's service or else be held to have assumed the risk of getting hurt. An application for a writ of certiorari was made in that case to the Supreme Court, which was supported by a citation of nearly all of the numerous cases which my associates have collected with so much industry to support the views expressed in the majority opinion, but the Supreme Court of the United States denied the writ, being satisfied, apparently, that the views expressed by this court were not unreasonable or unjust, nor so far contrary to established rules of law as to require correction by that tribunal. Southern Pacific Co. v. Yeargin, 183 U. S. 695, 22 Sup. Ct. 932, 46 L. Ed. 394.

In the case of Patterson v. Pittsburgh & Connellsville Railroad Co., 76 Pa. 389, 393, 394, 18 Am. Rep. 412, it was held by the Supreme Court of Pennsylvania that, if the instrumentality by which a servant is required to perform his duty is so obviously and imminently dangerous that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. In such a case, the court said:

"The law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which he otherwise would be entitled. But where the servant, in obedience to the requirement of the master, incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident."

In the case of Ford v. Fitchburg Railroad Co., 110 Mass. 240, 14 Am. Rep. 598, it was held that an engineer was not disabled from recovering against his employer, he having continued to use an engine with knowledge that it was not in good working order and that it was in some respects defective, although he sustained injuries in consequence of using it notwithstanding the defects. The court remarked, in substance, that the fact that he had run the engine over the road with knowledge that it was in a defective condition was not conclusive evidence of want of due care on his part, and it was not even suggested that because he had done so he had assumed the risk of getting hurt.

In the case of Lee v. Smart, 45 Neb. 318, 63 N. W. 940, it was held that where a servant, in obedience to the requirements of his master, incurs the risk of machinery or appliances which, although dangerous, are not of such a character that they may not be safely used by the exercise of reasonable skill and caution, he does not, as a matter of law, assume the risk of injury from accident resulting from the master's negligence; citing Sioux City & Pacific Railroad Co. v.

Finlayson, 16 Neb. 578, 20 N. W. 860, 49 Am. Rep. 724, where the same doctrine is announced.

In the case of Parker v. South Carolina & Ga. Railroad, 48 S. C. 364, 26 S. E. 669, 673, 676, the court held that an instruction was properly refused which declared "that an employé who works defective machinery, knowing the defects, assumes the risk, and if injured from such defect cannot recover, even if his employer knows it"; while it approved of an instruction, which was given by the trial court, to the effect that if, after working with machinery, a servant finds that it is unsound or defective to such an extent that a prudent person would not use it, then he would assume the risk of injury by using it under such circumstances.

Moreover, in Buswell on Personal Injuries, at section 207, the learned author says, with respect to defects in tools, machinery, and appliances which the servant has an opportunity to detect, that:

"The authorities are not agreed upon the question whether the employé assumes absolutely the risk of injury from apparent defects in machinery or appliances which are caused by the negligence of the master; but it is believed that the weight of modern authority is in favor of the rule that such injuries are not to be included in the ordinary risks of the employment, and that this rule is justified by sound reason. It is to be considered that the contract between the master and an employé is reciprocal, the obligation on the part of the master being to furnish suitable and safe means for doing the work; and this obligation, independent of any contract, rests as well on the duty which every member of the community is under, not to expose another to unnecessary danger."

Further on in the same section he remarks:

"It would seem to be unreasonable to say that the employé on his part contracts to take the risks of injury caused by the breach of the reciprocal contract on the part of the master, or that injuries caused by defects in the means furnished to the servant to do his work are in any just sense incidental to the employment, since the law justifies the servant in assuming that proper and sufficient appliances will be furnished him. It is apprehended, therefore, although there is much confusion in the expression of the rules on this subject in some of the cases, that the view of the law is to be accepted which holds that the whole question in such cases is whether or not the employé has been guilty of contributory negligence in continuing in his employment after he has discovered the existence of the defect."

And in Shearman & Redfield on the law of Negligence, at section 211, it is said:

"The true rule, as nearly as it can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault of which he had notice, if, under all the circumstances, a servant of ordinary prudence acting with such prudence would under similar conditions have continued the same work under the same risk; but not otherwise."

Relative to the decision of this court in King v. Morgan, 48 C. C. A. 507, 109 Fed. 446, to which some allusion is made in the majority opinion, this may be said, and the same remark may be made of the decision in Southern Pacific Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391, that these cases were correctly decided upon the ground that the defective appliances, to wit, a tamping rod in one case, and an unblocked frog in the other, which occasioned the injuries complained of, were not only in use when the respective plaintiffs in those cases entered the employer's service, but they were implements which at that time were in general use by other persons and corporations engaged in a like business, as the plaintiffs well

knew. They formed, therefore, one of the ordinary risks of the employment which the plaintiffs assumed. Besides, as the master is not required to use only the latest and most approved tools and appliances, but may use such as are in common use by other people engaged in like employment and are regarded as reasonably safe, neither of the defendants who were proceeded against in those cases could properly be said to have been guilty of culpable negligence.

The defendant company having failed to perform its statutory duty of keeping the gearing of the forming machine covered, and the plaintiff below having been injured by reason of such neglect, I think, for the reasons already stated, that the trial court properly advised the jury that she might recover, unless the risk which was incurred by working in proximity to the uncovered gearing was so great and imminent that a prudent person of the plaintiff's age and in her situation would not have incurred it. In the case of Thomas v. Quartermaine, 18 Q. B. D. 685, 696, where the maxim, Volenti non fit injuria, seems to have been first prominently applied to an action for personal injuries, Bowen, L. J., who wrote the majority opinion of the Court of Appeal, strongly intimates that the maxim in question cannot be invoked by an employer as a defense when, as in this case, it appears that he has neglected the performance of a statutory duty, in consequence whereof one of his servants has sustained injury. His language is as follows:

"The maxim, be it observed, is not 'scienti' non fit injuria, but 'volenti.' It is plain that mere knowledge may not be a conclusive defense. There may be a perception of the existence of the danger without comprehension of the risk, as where the workman is of imperfect intelligence, or, though he knows the danger, remains imperfectly informed as to its nature and extent. There may again be concurrent facts which justify the inquiry whether the risk, though known, was encountered voluntarily. The injured person may have had a statutory right to protection, as where an act of Parliament requires machinery to be fenced."

I am also of opinion that even on the theory on which the majority decision proceeds, namely, that where by the negligence of the master his servant has been exposed to a risk of injury that was neither great nor imminent, he may, by continuing at work with knowledge of the danger, be held to have consented or agreed to assume it, the decision of my associates is erroneous in holding as a matter of law, on the facts and circumstances of the case, that the plaintiff did voluntarily agree to assume the risk to which she was exposed by the admitted fault of the master, and in withdrawing that issue from the jury. When the decision in Thomas v. Quartermaine, supra, was first announced, it was assumed by many that as the result of that decision, when an employer succeeded, in a personal injury case, in showing that his servant, before being hurt, had used the defective tool or appliance which occasioned the injury, with knowledge of the defect, or had shown that he had worked in an unsafe place with knowledge of its insecurity and had on that account sustained injury, he was immediately absolved from all liability for his neglect, and that the courts must perforce declare, as a matter of law, that the servant had agreed to assume the risk. It was very soon discovered, however, by the English judges, that this doctrine was exceedingly unjust to employés, and that it would enable employers to shift the responsibility

for providing unsafe tools and appliances upon their servants. Accordingly, in the case of Yarmouth v. France, 19 Q. B. D. 647, 653, 657, the decision in Thomas v. Quartermaine was carefully analyzed, and it was ruled, with much emphasis, that the fact that a servant uses a defective tool or appliances, with knowledge of the defect, is not sufficient as a matter of law to warrant any court in holding that he agreed to assume the risk. Lord Esher, Master of the Rolls, who delivered the majority opinion in Yarmouth v. France, said, inter alia:

"But does the maxim, Volenti non fit injuria, go this length, that the mere fact of the workman knowing that a thing is dangerous, and yet using it, is conclusive to show that he voluntarily incurred the risk? The answer to that depends, so far as this court is concerned, upon whether or not Thomas v. Quartermaine has so decided. * * * Taking the whole of that judgment together, it seems to me to amount to this: that mere knowledge of the danger will not do; there must be an assent on the part of the workman to accept the risk, with a full appreciation of its extent, to bring the workman within the maxim, Volenti non fit injuria. If so, that is a question of fact. Here the judge of the court below has come to the conclusion that the moment it appeared that the plaintiff knew and appreciated the danger, and did not at once quit the defendant's employ, he came within the maxim, and was therefore, upon the authority of Thomas v. Quartermaine, disentitled to recover. He did not bring his mind to bear upon the motives which induced the plaintiff to act as he did, whether he relied upon the foreman's statement that the employer would be responsible in case of an accident, or whether he was influenced by the fear of being thrown out of employ if he disobeyed the foreman's orders. All that was for a jury, and the judge ought to have applied his mind to it."

In that case it was accordingly held that the servant might recover from his master, who had provided him with a vicious horse to be driven and used in the performance of his daily duties, although it appeared that the servant had continued to use the vicious animal long after he had become fully conscious of the fact that he was vicious and unfit to be used. At all events it was decided that the lower court, upon this state of facts, was not authorized to say, as a matter of law, that he had assumed the risk and could not recover.

To the same effect was the decision in Thrussell v. Handyside & Company, 20 Q. B. D. 359, 364, where it was said by the court, inter alia:

"It cannot be said, where a man is lawfully engaged in work and is in danger of dismissal if he leaves his work, that he willfully incurs any risk which he may encounter in the course of such work, and here the plaintiff had asked the defendant's men to take care * * *. If the plaintiff could have gone away from the dangerous place without incurring the risk of losing his means of livelihood, the case might have been different; but he was obliged to be there; his poverty, not his will, consented to incur the danger."

And in a still later case, Smith v. Baker, 1 Appeal Cases, L. R. (1891) 325, which was decided by the House of Lords, the highest judicial authority in England, the doctrine announced in Yarmouth v. France, supra, was reaffirmed. In that case it appeared that the plaintiff was employed to drill holes in a rock. A crane was set up in close proximity to the place where he worked, so that the arm of the crane, which was used to lift stones, swung the same over the plaintiff's head, and he was injured by a falling stone. The doctrine was invoked in that case that the danger incident to the situation where the plaintiff was put at work was obvious, and that by continuing to work in the presence of visible dangers the plaintiff had agreed to as-

sume that risk.   The House of Lords, with only one dissenting voice, held that the question whether the plaintiff had undertaken to assume the risk, and for that reason was not entitled to recover, was one of fact and not of law, and that this was so both at common law and in cases arising under the employer's liability act of 1880, under which that case arose.   Some paragraphs of the decisions of the learned judges who sat in that case in the House of Lords are pertinent here, and deserve to be quoted.   For example, Lord Watson said (vide p. 355):

"When, as is commonly the case, his acceptance or nonacceptance of the risk is left to implication, the workman cannot reasonably be held to have undertaken it, unless he knew of its existence and appreciated or had the means of appreciating its danger.   But assuming that he did so, I am unable to accede to the suggestion that the mere fact of his continuing at his work with such knowledge and appreciation will in every case necessarily imply his acceptance.   Whether it will have that effect or not depends, in my opinion, to a considerable extent upon the nature of the risk and the workman's connection with it, as well as upon other considerations which must vary according to the circumstances of each case."

Farther on in his opinion the same learned judge observed:

"In the circumstances of this case, the question whether he [the plaintiff] has accepted the risk is one of fact; there is no arbitrary rule of law which decides it."

Lord Herschell observed (vide p. 362):

"Whatever the dangers of the employment which the employed undertakes, amongst them is certainly not to be numbered the risk of the employer's negligence, and the creation or enhancement of danger thereby engendered.   If, then, the employer thus fails in his duty towards the employed, I do not think that because he does not straightway refuse to continue his service it is true to say that he is willing that his employer should thus act towards him.   I believe it would be contrary to fact to assert that he either invited or assented to the act or default which he complains of as wrong, and I know of no principle of law which compels the conclusion that the maxim, 'Volenti non fit injuria,' becomes applicable."

Farther on in his opinion, when discussing the decision in Thomas v. Quartermaine, the same judge observed that if it was assumed in that case—

"That there was a breach of duty on the part of the employer in not having the vats fenced,   *   *   *   it seems to me that it must have been a question of fact, and not of law, whether the plaintiff undertook the employment with an appreciation of the risk which arose on the occasion in question from the particular nature of the work which he had to perform.   If the effect of the judgment be that the mere fact that the plaintiff, after he knew the condition of the premises, continued to work and did not quit his employment, afforded his employer an answer to the action, even though a breach of duty on his part was made out, I am unable, for the reasons I have given, to concur in the decision."

The same view of the question under discussion has been taken in this country.   For example, in Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537, it appeared that an employé in a mill, who had worked there for 13 years and was familiar with all of the surroundings, in attempting to go down some steps which were covered with ice, fell and was seriously injured.   The ice upon the steps was caused by exhaust steam from an engine which was run by the defendant company, which fell upon

the steps and froze, and the plaintiff knew the steps to be icy and more or less slippery in the winter season, and that at the time she was hurt she was going down the steps with a dinner pail in one hand and holding onto the railing with the other. It was held by the Supreme Judicial Court of Massachusetts, in an elaborate decision, that the question whether the plaintiff had assumed the risk in question was a question of fact for the jury, and that it could not be said, as a matter of law, that she appreciated the risk and agreed to assume it. Also in the case of Mahoney v. Dore, 155 Mass. 513, 30 N. E. 366, it appeared that the plaintiff, a servant girl, had fallen down a flight of steps in consequence of sleet and ice which had formed thereon because the defendant had suffered a skylight over the steps to become broken, thus permitting the sleet to form on the steps. It further appeared that the plaintiff had gone down the steps once before, that evening, and knew that they were slippery, and that when she fell she had hold of the railing and was trying to go down safely. The court held on this state of facts that the question whether the plaintiff had assumed the risk of injury by going down the steps, in their known icy condition, was properly submitted to the jury.

See, also, to the same effect, Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551, where it was held that the fact that a servant knows of the defective condition of the instrumentalities with which he works does not necessarily charge him with contributory negligence or the assumption of the risks growing out of such defects, and that it is the right of a jury to determine these questions. See, also, Pennsylvania R. Co. v. Jones (C. C. A.) 123 Fed. 753, 756; Thorpe v. Missouri Pacific Railroad Co., 89 Mo. 650, 662, 663, 2 S. W. 3, 58 Am. Rep. 120; Hamilton v. Rich Hill Mining Company, 108 Mo. 364, 375, 376, 18 S. W. 977; Myers v. Hudson Iron Company, 150 Mass. 125, 134, 22 N. E. 631, 15 Am. St. Rep. 176; Ferren v. Old Colony Railroad Co., 143 Mass. 197, 200, 9 N. E. 608. In this connection it is worthy of remark that in England the last vestige of the doctrine that a servant who continues at work with knowledge and appreciation of a defect in tools and machinery thereby impliedly agrees with his master to assume the risk of getting hurt was abolished by an act of Parliament passed August 6, 1897 (vide St. 60 & 61 Vict. c. 37, Chitty's English Statutes, Supplement 1895–1901, vol. 14), which makes the master liable to his servant for any injury which the latter sustains in consequence of the master's negligence in providing tools and appliances, unless "it is proved that the injury to the workman is attributable to the serious and willful misconduct of the workman"; thereby setting the seal of condemnation on the entire doctrine of assumption of risk as theretofore promulgated, or as it was understood to have been promulgated in Thomas v. Quartermaine, 18 Q. B. D. 685.

I do not deny that there are cases where some courts have held that the risk encountered by a servant in using a defective implement or appliance was so obvious that he must have appreciated it fully, and for that reason have declared that he assumed it; but I maintain that in case of a clear omission of duty by an employer which has occasioned an injury, where an inference is to be drawn from facts and circumstances that a servant appreciated the risk incident thereto and voluntarily agreed to assume it, the inference is essentially one of

fact and should be drawn by a jury, who are usually as well acquainted as judges with the motives which prompt human action, and who, in such cases as the one supposed, are quite as likely to form a correct conclusion. I have already remarked, and I repeat the thought, that it is not at all improbable that the plaintiff in this case had never considered the fact that her hand might slip between these uncovered cogs and be crushed. I have little doubt that a jury of reasonable men would have found without hesitation that she had never foreseen that such an accident might happen, and hence did not in fact appreciate the risk. She was comparatively young, and at an age when persons like her, in the course of their daily work, are not given to thoughts of lurking dangers. It is certain, I think, that she never thought of agreeing with her employer to assume the lurking danger to which she was in fact exposed, and to absolve her employer from all blame. The Legislature, however, appreciated the danger which she and thousands of others like her might unwittingly incur, and how they would naturally act—permitting their employers to make such provision for their safety as they saw fit, neither making any complaints on that account, nor quitting their employment. It accordingly said to employers, "You must cover machinery which may occasion injury when you can do so easily, and thus protect your servants from unnecessary risks." If such a duty can be evaded by voluntary agreements made by employers with their employés, and by implication only, then the existence of such agreements, when alleged, should be found by a jury. In no other way, in my judgment, will such statutes prove effective for the protection of human life.

This opinion has already been extended to unusual length. It is of greater length than a dissenting opinion in a personal injury case, or a majority opinion for that matter, ought to be. But the questions involved are important and will affect the rights of very many litigants, and on that account I desire to place on record a plain statement of the reasons why I dissent from doctrines which seem to me to have been formulated with an eye mainly to the protection of employers and with too little regard for the situation and rights of employés.